STATE OF IOWA, Appellee, v. VERN MARSHALL, Appellant.

374

June 26, 1928.

*F. M. Molsberry*, for appellant.

*John Fletcher*, Attorney-general, *C. J. Stephens*, Assistant Attorney-general, *D. N. Johnson*, County Attorney, and *E. R. Hicklin*, Special Prosecutor, for appellee.

Albert, J.—Numerous errors are assigned herein, the first arising from certain instructions offered by the defendant, which were refused by the court, to the point that larceny was an included offense under the charge here made against the defendant, and should have been submitted to the jury.

Under Section 13919, Code of 1927, the jury is given the power to find the defendant not guilty of the degree charged in the indictment, and guilty of any degree inferior thereto or of an attempt to commit the offense.

Section 13920 reads as follows:

"In all other cases, the defendant may be found guilty of any offense the commission of which is necessarily included in that with which he is charged in the indictment."

As to just what is an "included offense," the authorities seem fairly clear.

Every crime charged consists of certain specific elements, and if, from the elements of the crime charged, certain elements thereof may be taken, thereby leaving the necessary elements of another crime, the latter would be an  included offense. Or, to state it in another way, if certain elements are necessary to a criminal charge, and these elements, plus certain other elements, make the necessary elements of a higher crime, then the lower crime is included in the higher one. To illustrate: Certain elements are necessary to a simple assault. If, in addition to these elements, the evidence shows the completed assault, then we have an assault and battery, because assault is necessarily included in a charge of assault and battery. On the other hand, if to the elements of assault is added an intent to do great bodily injury, we have a higher crime, which necessarily includes assault. So with assault with intent to commit manslaughter, or with intent to commit murder. Each of these charges is included in an assault, and this is equally true of murder in either degree, or manslaughter. Or, to state it in still another way, where the minor offense is necessarily an elementary part of the greater, then the minor offense is included in the greater.

In our own cases we have held that assault is included in a charge of assault and battery (*Dixon v. State*, 3 Iowa 416; *State v. Graham*, 51 Iowa 72); that it is included in an assault with intent to do great bodily injury (*State v. Schele*, 52 Iowa 608); also in assault with intent to commit manslaughter (*State v. Smith*, 100 Iowa 1); that it is included in an assault with intent to do great bodily injury (*State v. Shaver*, 197 Iowa 1028); in an assault with intent to commit murder (*State v. Walker*, 133 Iowa 489). Assault and battery are not necessarily included in assault with intent to commit rape, because the element of battery is not necessary to the charge. *State v. McAvoy*, 73 Iowa 557; *State v. Roby*, 194 Iowa 1032. Yet, if the indictment charges battery, it is included. *State v. Kyne*, 86 Iowa 616; *State v. Perkins*, 171 Iowa 1.

We have held that in a charge of robbery, assault is included (*State v. Becker*, 159 Iowa 72), as well as an assault

to rob (*State v. Duffy,* 124 Iowa 705) ; also, that larceny is included in a charge of robbery (*State v. Mikesell,* 70 Iowa 176; *State v. Reasby,* 100 Iowa 231; *State v. Taylor,* 140 Iowa 470) ; also, that a charge of robbery includes larceny from the person (*State v. Taylor,* supra). These cases, with many others in our courts, are illustrative of the rule above suggested.

If we turn to the instant case for application of the rules above suggested, the defendant is charged with larceny from the person, and the question is whether the court should have submitted to the jury the requested instruction of the defendant on the crime of larceny. In other words, is larceny necessarily included in a crime of larceny from the person? To our minds, there can be but one answer to this question. Before the higher crime can be proven, every element of a charge of larceny must be proven, to which must be added proof that the property is taken from the person of the prosecuting witness, to make the higher charge. If the taking of the property of the prosecuting witness is shown to have been in fact a larceny, though it was not taken from the person, then there is no reason why the defendant could not be convicted of larceny, under a charge of larceny from the person. We held, in *State v. Mikesell,* supra, that the crime of larceny from a building necessarily includes the crime of larceny, and that, under a charge of larceny from a building in the nighttime, a conviction of simple larceny might be sustained. See, also, *State v. Nordman,* 101 Iowa 446.

In the case of *State v. Gleason,* 56 Iowa 203, we had a case where the defendant had been convicted of larceny before a justice of the peace, and, based on the same act, he was subsequently indicted for larceny from the person. We there held that his conviction for the larceny was good, as a plea of former conviction. See, also, *State v. Sampson,* 157 Iowa 257.

In *State v. Clem,* 49 Wash. 273 (94 Pac. 1079), the charge was that of larceny from the person. The court submitted the included offense of larceny, and the jury convicted of the latter offense. Defendant appealed, on the ground that assault was not an included offense. That court said:

"To feloniously take from the person of another the goods of that other and carry the same away has always been a crime, punishable as either grand or petit larceny. Therefore, when

the legislature defined and made punishable the specific act of feloniously taking property from the person, it did not create a new offense; it but recognized that there were degrees in larceny, some of which were deserving of more severe punishment than others, and sought to regulate the punishment in proportion to the offense. Larceny from the person, grand larceny, and petit larceny are for this reason but different degrees of the same crime, and are properly included in an information charging the higher offense; and being so, it is, of course, proper for the jury, on an information charging the higher offense, to find the accused guilty of any one of the lesser offenses that the facts proven will warrant.''

See, also, *State v. Steifel*, 106 Mo. 129 (17 S. W. 227), and 31 Corpus Juris 867.

We conclude, therefore, that, under a charge of larceny from the person, simple larceny is necessarily included.

This, of course, is all subject to the further rule that the evidence must justify the submission of the included offense. That is to say, even under the charge, if there is no evidence from which the jury could find the defendant guilty of the included offense, then such included offense need not be submitted. *State v. Kyne*, supra; *State v. Hutchinson*, 95 Iowa 566; *State v. Trusty*, 118 Iowa 498; *State v. Egbert*, 125 Iowa 443; *State v. Barkley*, 129 Iowa 484; *State v. Perkins*, 171 Iowa 1; *State v. Ockij*, 165 Iowa 237; *State v. Leete*, 187 Iowa 305; *State v. Huckelberry*, 195 Iowa 13. Also, where, under the evidence, the defendant is clearly guilty of the offense charged, or not guilty, it is not error to fail to give instructions with reference to included offenses. *State v. Sterrett*, 80 Iowa 609; *State v. Akin*, 94 Iowa 50; *State v. Dean*, 148 Iowa 566; *State v. Haywood*, 155 Iowa 466; *State v. Fortune*, 196 Iowa 884; *State v. Speck*, 202 Iowa 732; *State v. Flory*, 203 Iowa 918.

We turn now to the evidence in the case, for an application of these rules. The evidence offered by the State, in substance, was that, about 6:30 or 7 P. M. on May 15, 1927, the defendant and one Merle Jamison, both more or less intoxicated, entered a restaurant, in Wapello, going into what we assume from the evidence was a rear room. While they were therein, a quarrel ensued between them, with the result that

the defendant struck Jamison with his fists, knocking him down in such manner as to break a table loose from its fastenings and throw it upon the floor. The blows were either of sufficient force to stun Jamison or, because of his intoxicated condition, he made no effort to get up, but lay on the floor, supporting himself on his elbow. Shortly after the altercation, defendant and one James Johann carried Jamison to a door of the restaurant, from which he was dragged by the defendant to a small open space between the restaurant and another building, and left lying on the ground. The open space was immediately adjacent to the sidewalk, and visible from the street. When he entered the restaurant, Jamison was carrying a gold watch in his watch pocket, which was attached by a clasp and chain to the buckle of his belt. Some witnesses on behalf of the State testified that, when Jamison was lying in the space between the two buildings above referred to, they saw the defendant searching Jamison's pockets, or taking something therefrom which had the appearance of a watch. Jamison and the defendant were both arrested and placed in jail. Jamison testifies that, in the forenoon of the following day, while they were in jail, he discovered that his watch was missing. The two prisoners were confined in adjacent cells, and were engaged in friendly conversation. Jamison says that, when he discovered that his watch was gone, he told the defendant, and defendant admitted that he had it, and tried to return it to Jamison, but that the construction of the cells was such that it prevented this from being done. Jamison also testifies that the defendant said that the chain to the watch caught on the table at the restaurant, and when Jamison fell, the watch fell out of his pocket to the floor, and that he (defendant) picked it up, to preserve it. There is no other evidence in the case touching this proposition.

The prosecuting witness and defendant had been acquainted all of their lives, their relations were friendly, and they seem to have been "bottle" companions. The evidence shows that both were, to some extent, under the influence of intoxicating liquor at the time of this occurrence, although Jamison seems to have been more deeply intoxicated than the defendant. The State introduced testimony to show the value of the watch, and also several witnesses to show that the statement made by the defendant to Jamison about the watch's falling on the floor of

the restaurant was untrue. The defendant did not take the witness stand. What his version of this transaction was, is in no way evident, except the statement made by him to Jamison as to the manner of his coming into possession of the watch. Was the evidence in this case such that the jury could have found that the defendant was guilty of larceny, and not larceny from the person?

The rule, as above explained, seems to be well settled that ordinary larceny was included in the charge herein made against the defendant. The question then left is whether or not there is any evidence in the case under which it could be said that the jury could have found the defendant guilty of larceny, instead of larceny from the person. We are constrained to hold that there was.

It is to be remembered that the defendant is here insisting that the crime of larceny should have been submitted to the jury. He is not insisting that the evidence was not sufficient to hold the defendant guilty of any crime. It might be, under the testimony, if we accept the defendant's theory, that the watch was thrown from the pocket of Jamison at the time of the scuffle in the restaurant; but the jury might find, from all of the facts in the case, that, even though that be true, when Marshall picked up the watch, he had an intent to steal it. We think this question of larceny, as an included offense, should have been submitted.

The defendant, at the proper time, requested the giving of an instruction covering the question of criminal intent, which was refused by the court. The requested instruction reads as follows:

"You are instructed that, in order to constitute the crime of larceny from the person, it is incumbent upon the State to prove, beyond a reasonable doubt, that the defendant, at the time he took the watch in his possession, and from the person of the prosecuting witness, intended to appropriate the watch to his own use; and if you find by a fair preponderance of the evidence that he intended to return the watch to its rightful owner, then the defendant is not guilty of the crime charged, and you should so find."

The complaint is that the latter part of this instruction should have been given; that is to say, that, if the watch were taken with intent to return it to its rightful owner, defendant would not be guilty of the crime charged.

The court gave three instructions on this question of criminal intent. They are too long to set out *in haec verba*, but suffice it to say that they at no place contain any reference to this part of the instruction in question. Ordinarily, this would not be error, or, if error, would be nonprejudicial; but, under the peculiar facts in this case, we are led to conclude that it was prejudicial error.

The State introduced testimony to the effect that the defendant said he took possession of the watch to preserve it for the owner. Apparently, the defense made was bottomed on this proposition, and it therefore became material for the jury to determine whether the defendant took this watch with intent to steal it, or with intent to return it to the owner. Having made this claim as a defense, he was entitled to have his theory of the case submitted to the jury; and, the court having failed so to do, the error was prejudicial. The necessity for giving this instruction is made more apparent by reference to the testimony in the case. A long and friendly relationship existed between the parties, and they were both, to a greater or less extent, under the influence of intoxicating liquor. The testimony of Jamison, introduced on the part of the State, that defendant said that the chain caught on the table at the restaurant, and that, when he (Jamison) fell, and the watch fell from his pocket to the floor, defendant picked it up to preserve it, is a matter which tends to call for the giving of this instruction. We reach this conclusion more readily because the State put this issue in the case, and introduced evidence to contradict this statement.

It further appears from the testimony that Jamison had his picture taken, the day after the trouble which was the basis of this charge, and, over objection, this photograph was admitted in evidence. On just what theory, we are unable to determine. We have not the photograph before us, but are unable to conceive of any reason why this photograph was admissible in evidence.—*Reversed.*

EVANS, DE GRAFF, MORLING, and WAGNER, JJ., concur.

STEVENS, C. J., dissents.

STEVENS, C. J. (dissenting).—I. As, in my opinion, the charge in the indictment of robbery is fully sustained by the evidence, and the included offense of larceny should not have been submitted to the jury, I deem it not improper for me to briefly state the grounds upon which my conclusion is based. The record is singularly free from dispute as to the facts. All of the witnesses who testified on the point agree that the defendant and the prosecuting witness entered the restaurant together, and that, while they were there, an altercation ensued between them, in which the prosecuting witness was knocked down by the defendant. A very little later, the defendant with some assistance, removed the prosecuting witness from the restaurant to an adjoining space between it and another building. The removal of the prosecuting witness from the restaurant was accomplished in part by the defendant by dragging him into the open space.

The testimony on behalf of the State as to the alleged robbery was confined wholly to what occurred outside of the restaurant. The witnesses varied somewhat in their testimony, but it was not disputed on the trial. Later in the evening, both the defendant and the prosecuting witness were arrested, and confined in separate cells in the local jail. Both were more or less intoxicated. The following morning, the prosecuting witness discovered that his watch had been lost or stolen. He spoke to the defendant, who was, as stated, confined in a nearby cell, and asked him about the watch. The defendant stated that it was thrown out of the pocket of the prosecuting witness during the altercation in the restaurant; that it was picked up by him off the floor, and retained for safe-keeping. At this time, the defendant attempted to restore the watch, but the two men could not reach each other through the bars. The above incident was shown in the evidence by the testimony of the prosecuting witness only. Other witnesses who were in the restaurant testified that the watch did not fall upon the floor, and that it was not picked up by the defendant.

The majority agree that it is not error for the court to refuse to submit an included offense which is wholly without support in the evidence. Was it, therefore, error for the court in this case to refuse to submit to the jury the included offense

of larceny? I think not. In the first place, the testimony as to the conversation between the prosecuting witness and the defendant did not bear at all upon this question. The defendant cannot, under the record, justly claim that the offense committed, if any, was larceny. What occurred in the restaurant was wholly separate and distinct from what occurred outside. If the facts detailed by the prosecuting witness as to the conversation at the jail in any degree tend to prove larceny, the crime was fully consummated in the restaurant, and therefore could upon no conceivable theory be regarded as included in what occurred outside. The robbery, if any was perpetrated, was in the open space between the buildings outside of the restaurant, and in no way connected with the altercation therein. The two occurrences were wholly separate and distinct. The indictment does not charge the defendant with the larceny of the watch in the restaurant, but with the crime of robbery, begun and consummated in another place.

The purpose and effect of the evidence as to the conversation in the jail were to tend to show that the defendant had committed no crime whatever, but that he had, on the contrary, benevolently, and in the interest of his friend, picked up the watch for the sole purpose of preserving and keeping it for him. The evidence bore only upon the question of the defendant's guilt or innocence, and in no respect related to larceny as an included offense. In my opinion, if the court had submitted larceny as an included offense in this case, it would have committed reversible error.

II. The majority also hold that the court erred in refusing to give a requested instruction as to intent, which is copied in full in the opinion. The intent of the defendant to appropriate the watch to his own use was an essential element of the crime. The burden was on the State to prove such intent. The court, in my opinion, fully covered the law on this point in several paragraphs of its charge.

In Paragraph 7, the jury was told that, if it found that the watch was taken by the defendant, "still the defendant could not be convicted of the crime charged unless you also find beyond a reasonable doubt that said property was taken with the *intent* of *stealing*,—that is, of depriving the owner thereof. * * * But if you fail properly to find that the said watch was

taken with the *intent then and there* to convert the same to his own use, * * * then you should acquit the defendant.''

The court, in Paragraph 8, further said:

''If, from all the evidence and the facts and circumstances in the case, you find beyond a reasonable doubt that the defendant, at the time and place named, intended to steal the property described, then it would be your duty to find him guilty; but if, from all the evidence and facts and circumstances in the case, you have a reasonable doubt as to his felonious intent, then it would be your duty to acquit the defendant.''

Again, in Paragraph 9:

''The jury should bear in mind that the intent in question must be that intent which the defendant had at the time of the alleged taking; and if, at the time of said taking, there was such felonious intent, then the defendant would be guilty, and it could make no difference, and he would be equally guilty, if thereafter he changed his mind, and returned or made an effort to return the property to the owner. The jury should examine all the facts and circumstances disclosed by the evidence, and determine whether or not, at the time of the alleged taking, there was such felonious intent, which constitutes an essential element of the crime charged.''

The foregoing instructions were, in my opinion, equally as favorable to the defendant as the one requested, if not more so. The court should not have made particular reference to the evidence as to the conversation between the prosecuting witness and the defendant in the jail. If the testimony of what there occurred was admissible for any purpose, it was for its bearing upon the intent of the defendant, and, therefore, upon the ultimate question of his guilt or innocence. There is no particular in which it could have sustained the submission to the jury of larceny as an included offense. In my opinion, the crime charged in the indictment was fully established. There is nothing in the record to support a conviction of larceny, or to require the submission to the jury of this crime as an included offense. The defendant was guilty of robbery, as charged, or should have been acquitted.