# IN THE SUPREME COURT OF IOWA

No. 17–0784

Filed March 1, 2019

**STATE OF IOWA,**

Appellee,

vs.

**TRAVIS RAYMOND WAYNE WEST,**

Appellant.

_____

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Robert J. Blink, Judge.

Defendant seeks further review of a decision by the court of appeals affirming his conviction and sentence. **DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Nan Jennisch, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Darrel L. Mullins, Assistant Attorney General, John Sarcone, County Attorney, and Andrea Petrovich and Joseph Danielson, Assistant County Attorneys, for appellee.

**APPEL, Justice.**

Travis West was convicted of delivery of a controlled substance, Iowa Code § 124.401(1)(*c*)(1) (2015), and involuntary manslaughter by a public offense other than a forcible felony or escape, *id.* § 707.5(1)(*a*). The charges arose out of the death of Bailey Brady as the result of a heroin and ethanol overdose. After a jury trial, West was convicted and sentenced for both offenses. West appealed.

We transferred West's appeal to the court of appeals. The court of appeals held that there was sufficient evidence to support the verdict, that there was no error in the admission of certain challenged evidence, and that the crimes of involuntary manslaughter by a public offense and delivery of a controlled substance did not merge.

We granted further review. We consider only the merger question. We decline to review the rulings of the court of appeals that there was substantial evidence to support the verdict and that certain evidence was properly admitted. On these issues, the ruling of the court of appeals stands. *See State v. Doggett*, 687 N.W.2d 97, 99 (Iowa 2004) (recognizing our discretion to consider all issues raised in initial appeal but considering on further review only one of those issues and allowing the court of appeals decision to stand on other issue).

On the question of whether the offenses merge, we conclude, for the reasons expressed below, that they do not. As a result, the district court ruling on the merger question is affirmed.

### I. Procedural and Factual Background.

A jury could have found the following facts. Bailey Brady died from a drug overdose on June 5, 2015. On the evening of her death, she visited several bars and consumed alcoholic beverages but was not intoxicated.

After returning to her apartment, Brady invited West and his brother at about 1:00 a.m. to come to her apartment.

West lived about two hours away. West occasionally used heroin, which he obtained from a man named "Snap" in Des Moines. In the past, West had obtained heroin from Snap for Bailey's use. West knew that in July 2014, Brady had overdosed on heroin. He drove her to the hospital on that occasion.

Cell phone records reveal that Brady talked to West at 2:49 a.m. on the morning of June 5, 2015. Eight seconds later, West began a series of phone calls with Snap, his heroin supplier.

After the West brothers arrived at Brady's apartment, West and Brady went to a convenience store to purchase food a few minutes after 4:00 a.m. They returned to the apartment. West's brother later found Brady slumped over the bathtub in the apartment and not breathing. West called 911 a few minutes after 5:00 a.m. Paramedics transported Brady's body to the hospital where she was pronounced dead. An autopsy revealed blood alcohol "below . . . legal limit" as well as a fatal amount of heroin. Medical testimony at trial indicated that "without the heroin, she would have been fine." The heroin that killed her was likely ingested within thirty minutes of death. After the 911 call, phone records reveal six actual or attempted calls between West and Snap.

The State charged West with delivery of a controlled substance, Iowa Code § 124.401(1)(*c*)(1), and involuntary manslaughter by a public offense other than a forcible felony or escape, *id.* § 707.5(1)(*a*). The involuntary manslaughter charge is a class "D" felony, while delivery of a controlled substance is a class "C" felony. A jury found him guilty of both charges, the district court entered judgment, and West was duly sentenced for each crime.

## II. Standard of Review.

West's claim that the district court erred in failing to merge convictions can be raised at any time because any unlawful failure to merge results in an illegal sentence. *State v. Love,* 858 N.W.2d 721, 723 (Iowa 2015). Review of an illegal sentence for lack of merger is for correction of errors at law. *Id.*

## III. Discussion.

**A. Introduction.** The question of when one offense is a lesser included offense of another has perplexed courts for centuries. The question of what constitutes lesser included offenses has been characterized as a "many-headed hydra," as an issue that "has challenged the effective administration of criminal justice for centuries," and as one "not without difficulty." *Fuller v. United States*, 407 F.2d 1199, 1228 (D.C. Cir. 1967) (third quotation); *Brown v. State*, 206 So. 2d 377, 380 (Fla. 1968) (second quotation), *abrogated on other grounds by In re Use by Trial Cts. of Standard Jury Instructions in Criminal Cases*, 431 So. 2d 594, 596–97 (Fla. 1981); Dorean Koenig, *The Many-Headed Hydra of Lesser Included Offenses: A Herculean Task for the Michigan Courts*, 1975 Det. C. L. Rev. 41, 63 (first quotation). Sometimes, the doctrine is said to turn on analysis of legal elements of the crimes, sometimes on the facts and evidence, and sometimes based on the interrelationship of the crimes involved. *See generally* Christen R. Blair, *Constitutional Limitations on the Lesser Included Offense Doctrine*, 21 Am. Crim. L. Rev. 445, 447–51 (1984).

Whatever the proper test, the consequence of a finding that a crime is a lesser included offense of a greater crime is that the lesser crime merges into the greater crime where a defendant is convicted of both offenses. The common law doctrine of merger of lesser included offenses into greater offenses is often expressed in statutory provisions.

As is apparent, the proposition that a lesser included offense merges into the greater offense is related to the constitutional concept of double jeopardy.[1] Although no constitutional issue is raised in this case, the double jeopardy cases provide a backdrop to analysis of statutory provisions implementing the merger rule.

**B. Relevant Statutory Provision and Rule on Lesser Included Offenses.** In 1976, the Iowa legislature enacted Iowa Code section 701.9. 1976 Iowa Acts ch. 1245, ch.1, § 109. As of 2015, the section provides,

> No person shall be convicted of a public offense which is necessarily included in another public offense of which the person is convicted. If the jury returns a verdict of guilty of more than one offense and such verdict conflicts with this section, the court shall enter judgment of guilty of the greater of the offenses only.

Iowa Code § 701.9. The key question under the statute is when a public offense is "necessarily included in another public offense." *Id.*

Iowa Rule of Criminal Procedure 2.6(2) uses language that is similar but not identical to Iowa Code section 701.9. *See* Iowa R. Crim. P. 2.6(2). This rule provides that "[u]pon prosecution for a public offense, the defendant may be convicted of either the public offense charged or an included offense, but not both." *Id.*

**C. Federal Caselaw Related to Double Jeopardy and "Necessarily Included" Offenses.**

1. *Double jeopardy caselaw.* A brief review of federal cases provides background for our consideration of the statutory issue in this case. In *Blockburger v. United States*, 284 U.S. 299, 301, 52 S. Ct. 180, 181 (1932), the United States Supreme Court considered whether two crimes—selling

---

[1]The Fifth Amendment to the United States Constitution provides that "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V.

forbidden drugs not from an original stamped package and selling such drugs not pursuant to a written order—were one offense. In answering the question, the *Blockburger* Court employed an elements test, declaring that the test is whether "each provision requires proof of a fact which the other does not." *Id.* at 304, 52 S. Ct. at 182.

While *Blockburger* involved a question of statutory interpretation, the linkage between statutory interpretation and the Double Jeopardy Clause was explicitly made in *Whalen v. United States*, 445 U.S. 684, 688, 100 S. Ct. 1432, 1435–36 (1980). In *Whalen,* the question was whether the Double Jeopardy Clause of the United States Constitution barred sentences for both the crime of rape and the separate crime of killing in the course of perpetration of the rape. *Id.* at 685–87, 100 S. Ct. at 1434–35.

In *Whalen,* the Supreme Court emphasized that "the petitioner's claim under the Double Jeopardy Clause cannot be separated entirely from a resolution of the question of statutory construction." *Id.* at 688, 100 S. Ct. at 1435–36. According to the *Whalen* Court, "if Congress has not authorized cumulative punishments for rape and for an unintentional killing committed in the course of the rape . . . the petitioner has been impermissibly sentenced." *Id.* at 688–89, 100 S. Ct. at 1436. "If a federal court exceeds its own authority by imposing multiple punishments not authorized by Congress, it violates not only the specific guarantee against double jeopardy, but also the constitutional principle of separation of powers in a manner that trenches particularly harshly on individual liberty." *Id.* at 689, 100 S. Ct. at 1436.

The *Whalen* Court concluded that Congress did not intend to impose consecutive punishments for rape and unintentional killing in the perpetration of rape. *Id.* at 690, 100 S. Ct. at 1437. The *Whalen* Court

noted that the criminal statutes themselves did not state whether Congress intended multiple punishments. *See id.* But the *Whalen* Court referred to a general sentencing statute that obliquely seemed to stand for the proposition that multiple punishments arising out of the same criminal transaction cannot arise unless each offense "requires proof of a fact which the other does not." *Id.* at 691–92, 100 S. Ct. at 1437–38 (emphasis omitted) (quoting D.C. Code § 23-112 (1973)). This is, of course, the *Blockburger* elements test. *See id.* The *Whalen* Court stated that "[t]he assumption underlying the rule is that Congress ordinarily does not intend to punish the same offense under two different statutes." *Id.* at 691–92, 100 S. Ct. at 1437–38.

The qualifier "ordinarily" is noteworthy. The *Whalen* Court declared that if the *Blockburger* test is met, Congress presumptively did not wish to impose cumulative punishment "in the absence of a clear indication of contrary legislative intent." *Id.* at 692, 100 S. Ct. at 1438. If the *Blockburger* test indicates that the offenses are the same, cumulative punishments cannot be imposed "unless elsewhere specially authorized by Congress." *Id.* at 693, 100 S. Ct. at 1438. Based on review of the statutory language of the crimes, the legislative history, and the lack of other authorization, the *Whalen* Court concluded that Congress did not intend for the imposition of multiple punishments for the crimes of rape and unintentionally killing in the perpetration of rape. *Id.* at 692–95, 100 S. Ct. at 1438–39.

The primacy of legislative intent was emphasized in *Albernaz v. United States*, 450 U.S. 333, 336, 101 S. Ct. 1137, 1141 (1981). In *Albernaz*, the Supreme Court considered whether cumulative punishments for conspiracy to import marijuana and conspiracy to distribute marijuana amounted to a violation of double jeopardy. *Id.* at

334–35, 101 S. Ct. at 1140. The *Albernaz* Court employed the *Blockburger* elements test and concluded that because each crime had an element which the other did not, no double jeopardy problem was present. *Id.* at 339, 101 S. Ct. at 1142.

But the *Albernaz* Court did not stop with the *Blockburger* analysis. The *Albernaz* Court went on to employ additional reasoning to reject the notion that Congress intended to prohibit multiple punishments. *Id.* at 339–44, 101 S. Ct. at 1142–45. Among other things, the *Albernaz* Court noted that "the two conspiracy statutes are directed to separate evils presented by drug trafficking." *Id.* at 343, 101 S. Ct. at 1144. The *Albernaz* Court closed with the observation that where Congress intended to impose multiple punishments, such sentences do not violate the Double Jeopardy Clause. *Id.* at 344, 101 S. Ct. at 1145.

The bread crumbs in *Whalen* and *Albernaz* suggesting that multiple punishments might be imposed in some circumstances even if the *Blockburger* test was met led to the final destination in *Missouri v. Hunter*, 459 U.S. 359, 368, 103 S. Ct. 673, 679 (1983). In *Hunter*, the Missouri Supreme Court had acknowledged that the legislature intended to impose multiple punishments for the crimes of armed criminal action and first-degree robbery, yet the court reasoned that under *Blockburger* the offenses were the "same offense." *Id.* at 363–64, 103 S. Ct. at 677. As a result, the state supreme court concluded that multiple punishments could not be imposed under the Double Jeopardy Clause. *Id.* at 364, 103 S. Ct. at 677.

The *Hunter* Court emphasized that simply because two statutes may be construed to proscribe the same conduct under *Blockburger*, the double jeopardy analysis is not complete. *Id.* at 368, 103 S. Ct. at 679. The *Hunter* Court held that even when the two offenses amounted to the same offense under *Blockburger*, double jeopardy did not prohibit cumulative

punishments if there was a clear indication of legislative intent to impose them. *Id.* at 368–69, 103 S. Ct. at 679.

The trend away from *Blockburger* as a double jeopardy anchor continued in *Garrett v. United States*, 471 U.S. 773, 778–79, 105 S. Ct. 2407, 2411–12 (1985). In *Garrett*, the Supreme Court considered whether a defendant could be convicted of a "continuing criminal enterprise" based in part upon a prior criminal conviction. *Id.* at 775, 105 S. Ct. at 2409. In this case, the Supreme Court declared "the first step in the double jeopardy analysis is to determine whether the legislature . . . intended that each violation be a separate offense." *Id.* at 778, 105 S. Ct. at 2411. The *Garrett* Court emphasized that in *Hunter* the Court indicated that the *Blockburger* test "is not controlling when the legislative intent is clear from the face of the statute or the legislative history." *Id.* at 779, 105 S. Ct. at 2411. Based on its review of the language, structure, and legislative history of the relevant statutes, the *Garrett* Court concluded that Congress plainly intended the criminal provisions in question to be separate violations. *Id.* at 779, 105 S. Ct. at 2412. Under the circumstances, the *Garrett* Court noted that "the *Blockburger* presumption must . . . yield to a plainly expressed contrary view on the part of Congress." *Id.*

The bottom line is that the double jeopardy cases of the United States Supreme Court have moved away from heavy reliance on the *Blockburger* elements test and now give greater emphasis to legislative intent in determining whether the state may impose multiple punishments on a defendant for crimes arising out of the same transaction. Although the *Blockburger* test has been characterized as giving rise to a presumption of sorts, that presumption may be overcome by a clear expression of legislative intent to impose multiple punishments.

2. *Necessarily included offenses under Federal Rule of Criminal Procedure 31(c)(1).* Federal Rule of Criminal Procedure 31(c)(1) provides that "[a] defendant may be found guilty of . . . an offense necessarily included in the offense charged." Fed. R. Crim. P. 31(c)(1). Not surprisingly, the federal courts divided on the question of what offense is necessarily included in the offense charged. *Compare United States v. Whitaker,* 447 F.2d 314, 319 (D.C. Cir. 1971) (applying "inherent relationship" test), *with United States v. Schmuck,* 840 F.2d 384, 387–88 (7th Cir. 1988) (en banc) (applying elements test), *aff'd,* 489 U.S. 705, 109 S. Ct. 1443 (1989).

In *Schmuck v. United States*, 489 U.S. at 715, 109 S. Ct. at 1450, the Supreme Court examined the divergent interpretations of the rule. The *Schmuck* Court considered whether, under the rule, the offense of odometer tampering was a lesser included offense of mail fraud. *Id.* at 721–22, 109 S. Ct. at 1453. In answering the question in the negative, the *Schmuck* Court embraced the elements test. *Id.* The Schmuck Court emphasized that the elements test was more consistent with the "offenses" and "inclusion" language of the rule, that it provides notice of potential charges, and that the test is more certain and predictable. *Id.* at 716–21, 109 S. Ct. at 1450–53. The *Schmuck* Court did not further consider legislative history of the underlying criminal statutes.

**D. Iowa Caselaw.**

1. *Lesser included offenses.* Our Iowa cases dealing with the problems of lesser included offenses have not been linear. Our older cases relied on an elements test similar to that enunciated in *Blockburger*, 284 U.S. at 304, 52 S. Ct. at 182. *See State v. Marshall,* 206 Iowa 373, 375, 220 N.W. 106, 106 (1928). In *State v. Everett*, 157 N.W.2d 144, 148–49 (Iowa 1968), we cited *Marshall* as authority in applying an elements test in

determining that operation of a motor vehicle without the owner's consent was not a lesser included offense of larceny of a motor vehicle. Four members of the *Everett* court, however, dissented. *Id.* at 149 (LeGrand, J., dissenting). According to the dissent, whether offenses are included should not be determined by the elements of the crimes, but on the facts of the particular case. *Id.* at 149–50.

The *Everett* dissent demonstrated that the test for determining what offenses are "included" in the greater offense was contested terrain. Indeed, five years later, in *State v. Hawkins*, 203 N.W.2d 555, 557 (Iowa 1973) (en banc), *Everett* was overruled. A majority of the court now held that the manner of determining whether an offense was included in a greater offense must be determined not by the elements of the offenses but by the evidence in each case. *Id.* at 557–58.

The evolution of our caselaw regarding what crimes are included in greater crimes was hardly finished. In *State v. Smith*, 223 N.W.2d 223, 225 (Iowa 1974), we held that there are two steps in determining whether one offense is necessarily included within another. According to *Smith*, the first step was the legal elements test, and the second step was "an ad hoc factual determination." *Id.* In *Smith*, we held the elements test was not met and, therefore, there was no need to make any factual determinations. *Id.* at 226.

We again revisited the question of what constitutes a necessarily included offense in *State v. Jeffries*, 430 N.W.2d 728, 730 (Iowa 1988). In *Jeffries*, we canvassed the various differing approaches to determining when an offense is a lesser included offense of a larger crime. *Id.* at 730–35. At the time of *Jeffries*, the court had the benefit of Iowa Code section 701.9. *See id.* at 736. After reviewing the various approaches, the *Jeffries* court determined that "the strict statutory-elements approach" is the best

approach. *Id.* The *Jeffries* court noted that the strict elements approach is embodied in Iowa Code section 701.9 and in Iowa Rule of Criminal Procedure 21(3), the latter of which provided that a defendant may be convicted at trial "of any offense the commission of which is necessarily included in that with which the defendant is charged." *Id.* (emphasis omitted) (quoting Iowa R. Crim. P. 21(3) (1985)). We also stressed that the strict elements approach provides "the most clarity to . . . practitioners and judges." *Id.* at 737 (quoting Janis L. Ettinger, *In Search of a Reasoned Approach to the Lesser Included Offense*, 50 Brook. L. Rev. 191, 201 (1984)). The *Jeffries* court further argued that the strict elements approach is more logical, better comports with the constitutional requirement of adequate notice of charges than other tests, passes muster in a double jeopardy context, and lessens potential due process concerns. *Id.* at 737–39.

2. *Double jeopardy cases.* In several cases after *Jeffries*, however, we considered the question of what crimes were necessarily included in larger offenses for purposes of double jeopardy. In *State v. McKettrick*, 480 N.W.2d 52, 57–58 (Iowa 1992), we noted that because the elements of the crimes involved in the case were not the "same," a presumption arose under the *Blockburger* approach that McKettrick could be subject to multiple punishment for the crimes. The *McKettrick* court, however, emphasized that the application of the *Blockburger* test was not the end of the matter under United States Supreme Court precedent and that the court was required to examine whether there is a clear indication of contrary legislative intent. *Id.* at 58. In *McKettrick*, the defendant argued that it was simply impossible for him to be guilty of both assault with intent to inflict serious injury and assault without the intent to inflict serious injury. *Id.* We found the logic persuasive and held that

prosecution for both offenses would violate double jeopardy notwithstanding the fact that the offenses did not involve the same elements under *Blockburger*. *Id.*

We again confronted a double jeopardy challenge in *State v. Gallup*, 500 N.W.2d 437, 441 (Iowa 1993). In *Gallup*, the defendant was found guilty of delivery of a controlled substance and distribution of a taxable substance without a drug tax stamp. *Id.* In considering the double jeopardy issue, we noted that "the *Blockburger* legal elements test is determinative of double jeopardy only when legislative intent is not clearly expressed by statute." *Id.* at 443. Based on a statutory provision stating that the chapter was not "a defense or affirmative defense to or immunity for a dealer from criminal prosecution pursuant to Iowa law," we concluded that the legislature clearly authorized multiple punishments. *Id.* (emphasis omitted) (quoting Iowa Code § 421A.5 (1991), currently § 435B.5).

Notably, the defendant in *Gallup* also brought a challenge under Iowa Code section 701.9. *See id.* at 445. In *Gallup*, we declared that "[s]ection 701.9 codifies the double jeopardy protection against cumulative punishment." *Id.* Because we had already found that double jeopardy would not be violated by cumulative punishments in the case, the statutory claim under Iowa Code section 701.9 was without merit. *Id.*

Finally, we considered a double jeopardy challenge in *State v. Lewis*, 514 N.W.2d 63, 64 (Iowa 1994). In *Lewis*, the crimes involved were criminal gang participation and terrorism. *Id.* We concluded that terrorism was a lesser included offense of criminal gang participation as terrorism was the underlying offense for criminal gang participation. *Id.* at 69. Yet, we concluded that the legislature intended to authorize multiple punishments. *Id.* We came to this conclusion because under the

statutory scheme a prosecutor would never charge gang participation using various predicate offenses. This is because the sentence for gang participation is either the same or less than the penalty for the underlying crime. *Id.* The effect of merger would be to effectively nullify or make useless the charge of gang participation. *Id.*

3. *Post-*Gallup *cases involving Iowa Code section 701.9.* After *Gallup*, our interpretation of Iowa Code section 701.9 used the same approach as utilized by the United States Supreme Court in analyzing double jeopardy cases. For instance, in *State v. Halliburton*, 539 N.W.2d 339, 340 (Iowa 1995), we considered whether multiple punishment for two crimes—possession of an offensive weapon and possession of an offensive weapon by a felon—violated double jeopardy or Iowa Code section 701.9. We repeated the observation in *Gallup* that Iowa Code section 701.9 codified double jeopardy protection, and we did not provide an independent statutory analysis. *Id.* at 344. Instead, we utilized the method applied by the United States Supreme Court in double jeopardy cases. *See id.*

We first recognized in *Halliburton* that, under the elements test, "the possession of an offensive weapon is a lesser included offense of possession of an offensive weapon by a felon." *Id.* But that was not the end of the analysis. We then proceeded to consider whether the legislature had intended cumulative punishments. *Id.* We concluded that it did. *Id.* We observed that both crimes were class "D" felonies. *Id.* If multiple penalties were prohibited, there would never be a reason to bring a charge of possession of an offensive weapon by a felon as it would always merge with the lesser offense. *Id.* We further noted that the legislative intent to impose cumulative punishments was reflected in the different purposes of the statutes. *Id.* at 344–45. One statute focuses on "particularly harmful

*weapons*" while the other focuses on "potentially harmful *persons*." *Id.* at 345.

We continued this approach to Iowa Code section 701.9 in two cases. In *State v. Anderson*, 565 N.W.2d 340, 344 (Iowa 1997), and *State v. Hickman*, 576 N.W.2d 364, 368 (Iowa 1998), we recognized that double jeopardy principles apply under Iowa Code section 701.9.

A contrary view soon emerged to interpreting Iowa Code section 701.9. In *State v. Daniels*, 588 N.W.2d 682, 683 (Iowa 1998), we considered whether double jeopardy prohibited multiple punishments for the crimes of first-degree burglary and assault while participating in a felony. We concluded that the crimes had different elements and, for that reason, concluded that multiple punishments did not give rise to a double jeopardy claim. *Id.* at 684–85.

Justice Carter concurred specially. *Id.* at 685 (Carter, J., concurring specially). Justice Carter asserted that Iowa Code section 701.9 merely enacted the legal elements test of *Blockburger*. *Id.* Under Justice Carter's theory, in all cases where the elements of the lesser included offense are the same as those in the greater offense, merger occurs under the statutory provision. *Id.* He rejected the second step beyond *Blockburger*, namely, inquiry into legislative intent. *Id.* at 685–86. According to Justice Carter, the second step improperly allows included offenses to be separately punished based upon the court's "intuitive conclusions concerning a presumed legislative intent." *Id.* Justice Carter regarded the exploration of legislative intent in *Halliburton* as "an unwarranted judicial abrogation of the clear directive contained in section 701.9." *Id.* at 686. Justice Carter reprised his *Daniels* concurrence in *State v. Lambert*, 612 N.W.2d 810, 816–17 (Iowa 2000) (Carter, J., concurring specially), and in *State v.*

*Reed*, 618 N.W.2d 327, 337 (Iowa 2000) (Carter, J., concurring in part and dissenting in part).

Since *Daniels*, *Lambert*, and *Reed*, we have decided a number of cases under Iowa Code section 701.9. *See, e.g.*, *State v. Ceretti*, 871 N.W.2d 88, 92 (Iowa 2015). On two occasions, we recognized the position of Justice Carter on the merger question but found it unnecessary to address the issue. *See State v. Stewart*, 858 N.W.2d 17, 23 (Iowa 2015); *State v. Bullock*, 638 N.W.2d 728, 732 (Iowa 2002).

**E. Analysis.** West asserts that the offenses of involuntary manslaughter by commission of a public offense under Iowa Code section 707.5(1)(*a*) and delivery of a controlled substance under Iowa Code section 124.401(1)(*c*)(1) should have merged. He cites Iowa Code section 701.9 and Iowa Rule of Criminal Procedure 2.6(2). West claims that under the legal elements test, the crime of delivery of a controlled substance merges with the involuntary manslaughter offense. He claims that Iowa courts "apply a strict statutory approach when considering merger issues." Although West implies that the strict statutory approach is determinative, he does not explicitly ask us in his main brief to overrule the two-step approach of *Halliburton*, 539 N.W.2d at 344–45, and *Lewis*, 514 N.W.2d at 69.

In addition, West acknowledges that the involuntary manslaughter offense is a class "D" felony while the offense he claims is merged into involuntary manslaughter, delivery of a controlled substance, is a class "C" felony. West argues, however, that under our decision in *Gallup*, 500 N.W.2d at 442, it makes no difference that the greater offense is subject to a lesser penalty than the included offense.

After the court of appeals affirmed his conviction, West sought further review. In his application for further review, West reprises his prior

arguments but also explicitly asks us to revisit our approach to lesser included offenses and follow the approach of Justice Carter in *Lambert*, 612 N.W.2d at 816–17, and *Daniels*, 588 N.W.2d at 685–86. West thus argues that because the elements of delivery are necessarily included in the greater offense of involuntary manslaughter by public offense, the judgment and sentence for the conviction that merges should be vacated.

The State counters with a two-pronged argument. With respect to the *Blockburger* elements test, the State notes that the jury instruction regarding the delivery charge specifically stated that in order to find the defendant guilty the jury was required to find that the defendant "knew that the substance delivered was heroin." The State suggests that because it is possible to commit the crime of involuntary manslaughter by public offense through delivery of a drug other than heroin, the offenses do not merge.

In the alternative, the State relies on the second step of *Halliburton*, namely, legislative intent. The State notes that, in *Halliburton*, the court emphasized that the crimes of possession of an offensive weapon and possession of an offensive weapon by a felon were both class "D" felonies. 539 N.W.2d at 344. The *Halliburton* court reasoned that if merger occurred for crimes with identical punishment, there would never be a reason to charge a defendant with the greater offense. *Id.*

The State points out that reasoning similar to *Halliburton* was employed in *Lewis*, 514 N.W.2d at 69. In *Lewis*, the State asserts, we concluded that the "greater" crime of criminal gang participation did not merge with the "lesser" crime of terrorism because the penalty of the greater offense was less than the included offense. *Id.* The State argues that *Lewis* stands for the proposition that a penalty scheme providing that

the greater offense has a lesser punishment than the included offense indicates a legislative intent that multiple punishments be permitted.

We agree with the State's latter argument. In *Halliburton* and *Lewis*, we determined that while the legal elements test is a useful tool, it is not determinative. 539 N.W.2d at 344; 514 N.W.2d at 69. *Halliburton* and *Lewis* both stand for the proposition that where the greater offense has a penalty that is not in excess of the lesser included offense, a legislative intent to permit multiple punishments arises. 539 N.W.2d at 344–45; 514 N.W.2d at 69. Otherwise, there would be little point to the greater offense.

In this case, if the offenses merged, a person convicted of both involuntary manslaughter by public offense and delivery of a controlled substance would receive a lesser sentence than a defendant convicted solely of delivery of a controlled substance. It is hard to imagine that the legislature intended this result. While it is true that we made the observation in *Gallup* that it made no difference that the lesser included offense had a greater penalty, 500 N.W.2d at 442, this observation was made solely in the context of the legal elements test.

That leaves the question of whether we should abandon our two-step approach to Iowa Code section 701.9 as suggested by Justice Carter in his opinions in *Reed*, 618 N.W.2d at 337, *Lambert*, 612 N.W.2d at 816–17, and *Daniels*, 588 N.W.2d at 685–86.

As demonstrated above, however, the question of what constitutes a necessarily included offense is a difficult issue. What constitutes a necessarily included offense has given rise to multiple tests and varied analysis, both in Iowa and elsewhere. In the context of merger of offenses, the term "necessarily included" contains a heavy dose of ambiguity. *See Holiday Inns Franchising, Inc. v. Branstad*, 537 N.W.2d 724, 728 (Iowa 1995) (discussing the court's approach to resolving statutory ambiguity).

In *Halliburton* and *Gallup,* we decided to approach the statutory question under Iowa Code section 701.9 in a fashion similar to the federal double jeopardy cases. 539 N.W.2d at 344; 500 N.W.2d at 445. The basic approach taken in these cases can be easily stated: the question of whether an offense is necessarily included in a greater offense is a question of legislative intent. *See Halliburton*, 539 N.W.2d at 344. The *Blockburger* strict legal elements test is thus a tool in the analysis but is not solely determinative. *Id.*

The *Gallup* and *Halliburton* approach is reasonable. Relying on federal double jeopardy caselaw to suggest an interpretive approach to a state statute to address the merger of crimes is neither required nor prohibited. The question is not whether we would have decided the question differently if this were a question of first impression but whether our intervention twenty years later is required to correct an error.

Because our approach in *Gallup* and *Halliburton* coherently addresses a statutory ambiguity, is not unworkable, and amounts to a highly visible approach to statutory interpretation of the relationship between criminal offenses that the legislature has chosen not to revise over a twenty-year period, we decline to disturb this line of cases.

**IV. Conclusion.**

For the above reasons, the decision of the court of appeals and the judgment of the district court are affirmed.

**DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**

All justices concur except Wiggins, J., who takes no part.