# IN THE COURT OF APPEALS OF IOWA

No. 18-1733
Filed March 18, 2020

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**CHRISTOPHER A. PUCCIO,**
      Defendant-Appellant.
_____

      Appeal from the Iowa District Court for Dubuque County, Robert J. Richter,

District Associate Judge.


      A defendant appeals his conviction for attempted burglary in the third

degree. **AFFIRMED.**


      Martha J. Lucey, State Appellate Defender, and Stephan J. Japuntich,

Assistant Appellate Defender, for appellant.

      Thomas J. Miller, Attorney General, and Zachary Miller, Assistant Attorney

General, for appellee.


      Considered by Doyle, P.J., and Tabor and Schumacher, JJ.

**TABOR, Judge.**

A jury convicted Christopher Puccio of attempting to burglarize the Dubuque Pizza Ranch restaurant. He challenges that conviction by condemning the performance of his trial counsel. He contends counsel was remiss in not asking for three additional jury instructions: (1) a lesser-included-offense instruction on criminal trespass; (2) an instruction on prior inconsistent witness statements; and (3) an instruction on how to evaluate eyewitness identification testimony.

We reject the first and second ineffective-assistance claims because those instructions did not apply to Puccio's prosecution. As to the third claim, better development of the record is needed to decide whether counsel was ineffective for not ensuring the jury had information about the fallibility of eyewitness identification. So we preserve that claim for Puccio to raise if he seeks postconviction relief (PCR).

## I.    Facts and Prior Proceedings

About forty-five minutes after midnight, Dubuque police responded to an after-hours alarm triggered at the Pizza Ranch. They found a shattered glass panel in the door and the fist-sized rock that did the damage atop a dining table inside. When Officer Kim Hoover watched the restaurant's security footage, she saw two people approach the door. Both wore dark clothing. One appeared to punch through the broken glass, but "[n]obody went inside. Once the door opened, they ran immediately."

On that same August night, Wyatt Carlborg was driving around the northwest side of Dubuque in his Ford F-150 truck. In the front seat were two teenaged friends. In the backseat were Puccio and Alex Marvel. Carlborg's truck

was low on gas, so the backseat passengers brainstormed on how to come up with gas money. Coincidentally, Marvel was listening to the police scanner on his phone.

Carlborg parked on a cul de sac about one-tenth of a mile from the Pizza Ranch. Puccio and Marvel stepped out of the truck to discuss someone they knew who worked at the restaurant and could give them an access code. Impatient, they decided not to wait and left on foot without getting the code. Puccio and Marvel were gone about twenty minutes. Returning to the truck, Puccio and Marvel were "breathing heavy" and "looked anxious." They urged Carlborg to "go, go, go." Carlborg responded in such a hurry he "popped the curb" when speeding away. Marvel heard on the scanner that police intended to stop the truck, so all the passengers "hopped out, and everybody kind of scattered." Officers eventually caught up with each of the passengers. One of the teenagers initially lied to police about where he had been but quickly decided to cooperate with the investigation.

Dispatch sent patrol officer Austin Weitz to the area where police found the Ford truck. He spotted Puccio, who was wearing dark clothing, "hiding, crouched down in a large group of bushes" in a nearby backyard. Officer Weitz arrested Puccio. Meanwhile, the front-seat passengers told police they had not met Puccio before that night. Officers took those teenagers back to the scene and directed a light toward Puccio. Both teenagers identified Puccio as one of the two men who left the truck to get gas money.

The State charged Puccio with attempted burglary in the third degree, in violation of Iowa Code sections 713.2 and 713.6B(1) (2017). At trial, the State presented traffic camera video captured the night of the incident. The footage

showed two people walking toward the Pizza Ranch. Several investigating officers and both front-seat passengers testified for the State. The jury found Puccio guilty as charged. He now appeals.

## II. Scope and Standard of Review

We review ineffective-assistance-of-counsel claims de novo. *State v. Brown*, 930 N.W.2d 840, 844 (Iowa 2019). To prove each claim, the accused must show by a preponderance of the evidence counsel breached an essential duty and prejudice resulted. *Id.* at 855 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Counsel breaches an essential duty by making such serious errors that they are no longer functioning as the advocates the constitution guarantees. *State v. Lorenzo Baltazar*, 935 N.W.2d 862, 869 (Iowa 2019). Prejudice under *Strickland* means there is a reasonable probability that but for counsel's error the result of the trial would have been different. *Id.* That reasonable probability undermines our confidence in the outcome. *Id.*

Puccio asks us to stray from the *Strickland* prejudice standard, arguing failure to request jury instructions bearing on the theory of defense constitutes "structural error." A structural error is more than a flaw in the trial process itself; it affects "the framework within which the trial proceeds." *Krogmann v. State*, 914 N.W.2d 293, 313 (Iowa 2018) (citation omitted). Puccio lobbied our supreme court to retain this case to address the question of structural error. Because the supreme court transferred the case to us, we proceed under the established standard. *See Lorenzo Baltazar*, 935 N.W.2d at 873 (applying *Strickland* prejudice to ineffective-assistance claim involving jury instruction).

It has been our common practice to preserve challenges to trial counsel's performance for PCR proceedings. *See State v. Tompkins*, 859 N.W.2d 631, 637 (Iowa 2015). But, for now, we may address them on direct appeal if the record is adequately developed to do so.[1] *Id.*

### III. Analysis

Puccio claims trial counsel was ineffective in three ways: (1) not asking the court to instruct the jurors on the lesser included offense of criminal trespass; (2) not requesting an instruction on inconsistent witness statements; and (3) not requesting an eyewitness identification instruction. We will address each claim in turn.

### A. Lesser Included Offense

Where the crime charged includes lesser offenses, the district court must instruct the jury as to all lesser included offenses "of which the accused might be found guilty" under the charging instrument and the evidence presented, even if the parties do not request those instructions. Iowa R. Crim. P. 2.6(3). The doctrine of lesser included offenses is "an important component of procedural fairness and substantial justice for the accused in a criminal case." *State v. Miller*, 841 N.W.2d 583, 587 (Iowa 2014). But "[t]he question of when one offense is a lesser included offense of another has perplexed courts for centuries." *State v. West*, 924 N.W.2d 502, 504 (Iowa 2019). An accused is entitled to a proposed instruction on a lesser included offense if that offense meets the "impossibility test"—meaning it would be

---

[1] Our supreme court decided recent amendments to Iowa Code section 814.7 (prohibiting resolution of ineffective-assistance-of-counsel claims on direct appeal) apply only prospectively and do not apply to cases, like this one, pending on July 1, 2019. *See State v. Macke*, 933 N.W.2d 226, 228 (Iowa 2019).

legally impossible to commit the greater offense without simultaneously committing the lesser offense. *See Miller*, 841 N.W.2d at 588–89 (reviewing tests in *State v. Jeffries*, 430 N.W.2d 728, 730–31 (Iowa 1988), and *State v. McNitt*, 451 N.W.2d 824, 825 (Iowa 1990)).

Puccio argues his trial counsel breached an essential duty by not demanding an instruction on the lesser offense of criminal trespass.[2]  *See* Iowa Code § 716.8.  The criminal code defines trespass as "[e]ntering upon . . . property without the express permission of the owner . . . with the intent to commit a public offense . . . ."  Iowa Code § 716.7(2)(a)(1).  Criminal trespass is a lesser included offense of burglary under the "entering" alternative, but not under the "breaking" alternative.  *State v. Steens*, 464 N.W.2d 874, 875 (Iowa 1991).

But here the State charged Puccio with *attempted* burglary, not a completed burglary.  *Compare* Iowa Code § 713.2 (defining attempted burglary), *with* § 713.1 (defining burglary).  "Attempted burglary is distinguished from the completed crime only by defendant's failure to effect an entry."  *State v. Erving*, 346 N.W.2d 833, 836 (Iowa 1984).  Because it was possible for Puccio to commit attempted burglary without entering the Pizza Ranch, criminal trespass was not a lesser included offense of attempted burglary.  *See State v. Braggs*, 784 N.W.2d 31, 36–37 (Iowa 2010) (applying impossibility test).  Thus, counsel had no duty to request an

---

[2] Puccio's trial counsel did ask for an instruction on the lesser charge of criminal mischief.  Counsel told the court she had referenced criminal trespass and found criminal mischief in the same section of the instructions.  She reasoned because "we don't have actual entry that's alleged" criminal mischief seemed to be "the more appropriate alternative."  The court refused to instruct on criminal mischief because it was not a lesser included offense of attempted burglary.

instruction for the lesser offense. Puccio cannot prevail on this claim of ineffective assistance of counsel.

## B. Prior Inconsistent Statements

Puccio next contends his counsel should have asked for the uniform instruction on prior inconsistent statements by non-party witnesses. Puccio points out one of the teenaged passengers "admitted that he lied to police about where he was coming from and claiming he did not know either of the back seat occupants when one of them, Alex Marvel, is in fact, his cousin."

That instruction provides:

> You have heard evidence claiming [name of witness] made statements before this trial while not under oath which were inconsistent with what the witness said in this trial.
>      Because the witness did not make the earlier statements under oath, you may use them only to help you decide if you believe the witness.
>      Decide if the earlier statements were made and whether they were inconsistent with testimony given at trial. You may disregard all or any part of the testimony if you find the statements were made and they were inconsistent with the testimony given at trial, but you are not required to do so.
>      Do not disregard the testimony if other evidence you believe supports it, or if you believe it for any other reason.

Iowa State Bar Ass'n Iowa Crim. Jury Instruction 200.42.

An accused is entitled to this "impeachment instruction" if the witness made statements before trial materially at odds with the witness's testimony. *State v. Hardin*, 569 N.W.2d 517, 521 (Iowa Ct. App. 1997). Here the witness's testimony was not inconsistent with his out-of-court statements. Rather, he admitted under oath that when stopped by the officer: "I lied to him a couple of times . . . saying where I was coming from." The teenager testified he was reluctant to tell the truth because he had "a couple of run-ins with cops before." But the witness testified

he eventually became forthright with the officer. The officer affirmed that account at trial. Under these circumstances, counsel had no basis to request the impeachment instruction. Puccio is unable to show a breach of duty.

### C. Eyewitness Identification

In a third claim of ineffective assistance, Puccio argues counsel should have asked for the uniform instruction on eyewitness identification, which provides:

> The reliability of eyewitness identification has been raised as an issue. Identification testimony is an expression of belief or impression by the witness. Its value depends on the opportunity the witness had to see the person at the time of the crime and to make a reliable identification later.
> In evaluating the identification testimony of a witness, you should consider the following:
> 1. If the witness had an adequate opportunity to see the person at the time of the crime. You may consider such matters as the length of time the witness had to observe the person, the conditions at that time in terms of visibility and distance, and whether the witness had known or seen the person in the past.
> 2. If an identification was made after the crime, you shall consider whether it was the result of the witness's own recollection. You may consider the way in which the defendant was presented to the witness for identification, and the length of time that passed between the crime and the witness's next opportunity to see the defendant.
> 3. An identification made by picking the defendant out of a group of similar individuals is generally more reliable than one which results from the presentation of the defendant alone to the witness.
> 4. Any occasion in which the witness failed to identify the defendant or made an inconsistent identification.

Iowa State Bar Ass'n Crim. Jury Instruction 200.45.[3]

---

[3] This instruction originates from *United States v. Telfaire*, 469 F.2d 552 (D.C. Cir. 1972). In *State v. Tobin*, our supreme court explained:
> The *Telfaire* instruction reminds jurors that one of the most important issues in this case is the identification of the defendant as the perpetrator of the crime and that identity must be proven beyond a reasonable doubt. It advises that many factors should be taken into account in evaluating identification testimony, including capacity and opportunity to observe, circumstances under which the initial and

Puccio argues the "one-man lineup" used by the Dubuque police was "inherently suggestive" to the witnesses. And the jury needed more guidance on how to assess the reliability of the witnesses' identification of Puccio as the person who approached the Pizza Ranch.

The State responds that Puccio's counsel had no duty to request the eyewitness instruction because it "may have hurt him, not helped." *See State v. Shorter*, 893 N.W.2d 65, 86 (Iowa 2017) (holding defendant was entitled to eyewitness instruction, but could not show he was prejudiced by counsel failing to ask for it).

For this challenge to counsel's performance, we adhere to our preference to preserve the issue for possible PCR proceedings. *See State v. Mulvany,* 603 N.W.2d 630, 633 (Iowa Ct. App.1999). The issue of eyewitness identification was central to the jury's finding of guilt. We are unable to decipher the defense strategy from the record on direct appeal. Trial counsel should have an opportunity to explain her conduct. *Id.*

We affirm Puccio's conviction but preserve his third claim of ineffective assistance of counsel for potential PCR proceedings.

**AFFIRMED.**

---

subsequent identifications were made, length of time between the event and the identification, subsequent ability or inability to identify, and credibility.

338 N.W.2d 879, 880 (Iowa 1983) (quotations omitted).