# IN THE SUPREME COURT OF IOWA

No. 08–0051

Filed August 20, 2010

**STATE OF IOWA,**

   Appellee,

vs.

**JODY NOLAN MCCULLAH,**

   Appellant.

_____

On review from the Iowa Court of Appeals.


Appeal from the Iowa District Court for Polk County, Eliza Ovrom, Judge.


On further review, defendant contends the district court and court of appeals erroneously construed Iowa Code section 708.3B.  **DECISION OF COURT OF APPEALS VACATED IN PART; DISTRICT COURT JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.**


Mark C. Smith, State Appellate Defender, and Jason B. Shaw and Thomas J. Gaul, Assistant Appellate Defenders, for appellant, and Jody McCullah, Fort Madison, pro se.


Thomas J. Miller, Attorney General, Thomas S. Tauber, Assistant Attorney General, John Sarcone, County Attorney, and Jeffrey Noble, Assistant County Attorney, for appellee.

**HECHT, Justice.**

In a fight that began when a Polk County jail inmate attacked one officer and was subdued by several others, the inmate and the officers were left bloodied and injured. The inmate was charged with and convicted of four counts of inmate assault in violation of Iowa Code section 708.3B (2005). We are asked to determine whether a violation of section 708.3B requires that, as a result of an assault or other specified act by an inmate, a jail employee come into contact with blood, seminal fluid, urine, or feces of an inmate. Because we conclude a conviction under the statute may only arise if an employee comes into contact with such bodily substances not his or her own, but not necessarily those of the inmate, we affirm three of the convictions and reverse one.

## I. Background Facts and Proceedings.

On April 20, 2007, Jody McCullah was an inmate at the Polk County jail. He was out of his cell, purportedly for a medical examination on the second floor of the facility. Officer Harper, working in the second floor control room, directed McCullah to the medical unit and turned her back to him. McCullah snuck up behind Officer Harper, struck her on the side of her head with a closed fist, and began pushing buttons on the control panel.

Officer Rodish entered the area soon after and saw Officer Harper struggling with McCullah. After calling for help, Officer Rodish sprayed McCullah with pepper spray. McCullah resisted, and eventually Officer Rodish wrestled him to the floor. At some point during the fight, Officer Rodish cut his scalp, which bled profusely.

Deputies Bracelin, Purscell, and Vandepol responded to the call for help and became involved in the altercation. The fight ended when

Deputy Vandepol used a TASER on McCullah, and the officers were able to handcuff him.

All six people involved in the fight received medical assistance, and their injuries were photographed. Officer Harper had a large bruise on her forehead and blood on her lip and chin, although she did not have any bleeding wounds of her own. Officer Rodish had a significant amount of blood in his hair and on his shirt. He suffered one laceration on his scalp, which bled extensively and required five staples to close. Although Deputy Purscell sustained no bleeding wounds, he had blood on his arms, in his eye, and on his uniform when the melee ended. Deputy Bracelin had a small amount of blood on his hand, but he sustained no bruises or cuts himself. Deputy Vandepol was not injured and did not come into contact with blood. McCullah incurred several bleeding wounds on his face during the struggle.

McCullah was charged with one count of escape and four counts of inmate assault in violation of Iowa Code section 708.3B. At trial, McCullah moved for a judgment of acquittal contending the evidence was insufficient to establish he was the source of the blood the jail employees came into contact with. The district court concluded that a conviction under section 708.3B does not depend upon proof that the employees came into contact with the defendant's blood, as blood from any source would suffice. McCullah was convicted on all five counts. On appeal, McCullah asserted the district court misconstrued the statute as permitting a conviction without proof that the employees were exposed to McCullah's blood in the altercation and further claimed he was denied his right to self-representation. The court of appeals affirmed his

convictions. We granted his application for further review to address the construction of section 708.3B.[1]

## II. Scope of Review.

We review sufficiency-of-the-evidence challenges for the correction of errors at law. *State v. Jorgensen,* 758 N.W.2d 830, 834 (Iowa 2008). We will uphold a trial court's denial of a motion for judgment of acquittal if the record contains substantial evidence supporting the defendant's conviction. *State v. Westeen,* 591 N.W.2d 203, 206 (Iowa 1999). Substantial evidence is evidence that "would convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *Jorgensen,* 758 N.W.2d at 834. "The evidence must at least raise a fair inference of guilt as to each essential element of the crime." *State v. Casady,* 491 N.W.2d 782, 787 (Iowa 1992). "Evidence which merely raises suspicion, speculation, or conjecture is insufficient." *Id.*

To the extent that McCullah's insufficiency claim involves the district court's construction of Iowa Code section 708.3B, our review is also for errors at law. *State v. Anderson,* 782 N.W.2d 155, 157 (Iowa 2010).

## III. Discussion.

The evidence produced at trial established that all four jail employees came into contact with blood as they attempted to subdue McCullah. The source of the blood is unclear, however, as both McCullah and Officer Rodish sustained bleeding wounds in the process. McCullah argues that section 708.3B is violated only if a jail employee comes into contact with the defendant's blood or other bodily substances. Because the State did not prove the blood on the employees

---

[1]The court of appeals' disposition of the self-representation issue raised by the defendant and not addressed in this opinion stands as the final decision in this appeal.

was his, McCullah contends his motion for judgment for acquittal should have been granted.

We begin, of course, by reading the statute.

> A person who, while confined in a jail . . . commits any of the following acts commits a class "D" felony:
>
> 1. An assault, as defined under section 708.1, upon an employee of the jail . . . which results in the employee's contact with blood, seminal fluid, urine, or feces.
>
> 2. An act which is intended to cause pain or injury or be insulting or offensive and which results in blood, seminal fluid, urine, or feces being cast or expelled upon an employee of the jail . . . .

Iowa Code § 708.3B. Although section 708.3B does not explicitly specify a source of the bodily substances, McCullah argues the statute implies that a conviction may be sustained only by proof that the inmate committing the assault was the source of the blood, seminal fluid, urine, or feces with which the employee came into contact. He contends the harm the legislature intended to address involves the employee's risk of becoming infected with a disease as a result of exposure to the bodily fluids of an inmate.

The State, however, asserts the statute is not ambiguous and the intent of the legislature is clear from the words used. Because "blood, seminal fluid, urine, or feces" is not modified, the State asserts the statute plainly does not require that the inmate be the source of the bodily substances. Indeed, as the source is not specified in section 708.3B, the State asserts a conviction can be sustained even by proof of a jail employee's exposure to his or her own bodily substances. Accordingly, the State contends the statute is unambiguous, and this is no occasion for the application of our rules of statutory construction.

If, as the State contends, the statute is unambiguous, we will not engage in statutory construction. *Carolan v. Hill,* 553 N.W.2d 882, 887

(Iowa 1996). A statute is not ambiguous unless "reasonable minds could differ or be uncertain as to the meaning of the statute." *Id.* Ambiguity arises in two ways—either from the meaning of specific words or "from the general scope and meaning of the statute when all of its provisions are examined." *Id.*

We conclude that the lack of a modifier describing "blood, seminal fluid, urine, or feces" creates an ambiguity about which reasonable minds could differ. When we consider the statute as a whole, we believe reasonable minds could be uncertain as to whether the statute limits the universe of potential sources of the blood or other bodily substances to which a jail employee is exposed. Reasonable minds could disagree as to whether the lack of modifier for "blood, seminal fluid, urine, or feces" requires that the employee come into contact with the inmate's bodily substances, any third party's bodily substances, or any bodily substances including his or her own. Accordingly, we will apply our principles of statutory construction.

To ascertain the legislature's intent, we will assess "the statute in its entirety, not just isolated words or phrases," and we will seek to interpret it so that no part of it is rendered redundant or irrelevant. *State v. Gonzalez*, 718 N.W.2d 304, 308 (Iowa 2006). We strive for "a reasonable interpretation that best achieves the statute's purpose and avoids absurd results." *Id.* Additionally, we will "strictly construe criminal statutes" and resolve doubts in favor of the accused. *Id.*

Legislative intent is ascertained not only from the language used but also from "the statute's 'subject matter, the object sought to be accomplished, the purpose to be served, underlying policies, remedies provided, and the consequences of the various interpretations.' " *Cox v.*

*State*, 686 N.W.2d 209, 213 (Iowa 2004) (quoting *State v. Albrecht*, 657 N.W.2d 474, 479 (Iowa 2003)).

McCullah argues that an "inmate who gives a jailer a bloody nose is not guilty of inmate assault, but rather of assault causing bodily injury." To be sure, at the time the legislature enacted the inmate assault statute, chapter 708 already prohibited assault in various forms, including assault with intent to inflict serious injury (section 708.2(1) (1997)), assault causing bodily injury (section 708.2(2) (1997)), and assault against a peace officer both with and without the intent to inflict a serious injury (section 708.3A(1) and (4) (1997)). These statutes do not require the presence of or contact with bodily substances as a result of the assaultive conduct. Because these statutes conceivably already encompass a wide, if not exhaustive, range of assaults by inmates on jail or prison employees, by enacting the inmate assault statute the legislature must have intended to address some additional harm that arises because of the employee's exposure to certain bodily substances.

Among the obvious harms to be addressed by the enactment of section 708.3B are the risk of exposure to blood-borne diseases that arises when a person comes into contact with another person's bodily fluids[2] and the humiliating and degrading nature of coming into contact

---

[2]In fact, the prosecution contended the danger addressed by the statute was the risk of exposure to disease. In the State's closing argument, the assistant county attorney argued:

> What happened at Joe Purscell's house that night when his wife wants a kiss goodnight or Brandon Bracelin's child wants a peck on the lips before he goes to sleep? Don't you think those men have to hesitate for just a minute? Don't you think they have to be wondering, What is coursing through my veins? What poison was I exposed to as a result of this man's actions? Should they have to deal with those doubts? Should they have to deal with that wonder?

with other bodily substances.[3]  With these purposes in mind, we believe one construction becomes more reasonable than the others.

McCullah contends that the risk of exposure to blood-borne diseases is greatest when a jail employee is exposed to the bodily fluids of an inmate.  However, as the State points out, inmates are not the only people who may be infected with diseases such as hepatitis or HIV.  Rather, the risk of exposure to disease arises when a person is exposed to anyone else's bodily fluids, and not when an employee is exposed to his or her own bodily fluids.  Accordingly, to fully address the harms sought to be remedied and to avoid absurd results, we conclude a conviction under section 708.3B requires proof beyond a reasonable doubt that an employee came into contact with another person's blood, seminal fluid, urine, or feces as a result of an assault by an inmate.

The State concedes that if we construe section 708.3B to require the employee come into contact with blood or bodily substances not his or her own, then McCullah's conviction for inmate assault against Officer Rodish should be reversed.  We agree.  The evidence established that

---

[3]Although our legislature has provided no statement of intent in the legislative history of this statute, the legislatures in other states have provided some insight into their motivation when they have enacted similar statutes.  For example, the New York State Assembly explained its reasoning when it enacted Penal Law section 240.32, aggravated harassment of an employee by an inmate.

> Within the past decade, there have been over 200 reported cases of inmates in state correctional facilities throwing, tossing or expelling excrement, urine, blood or other bodily fluids at correctional officers.  In addition to the vile and degrading nature of such conduct, the possibility for the transmission of diseases makes this conduct potentially a health risk for correctional officers, employees of the division of parole and employees of the office of mental health located within a correctional facility.  While administrative and disciplinary remedies are available for inmates who engage in this type of conduct, these remedies have not been effective in curbing this behavior.

N.Y. Penal Law § 240.32 Legislative Memorandum (McKinney 2008).

Officer Rodish was covered in blood, but also that he suffered a wound to the head that bled profusely. Although McCullah had cuts to his face, the evidence did not establish that he was the source of any of the blood on Officer Rodish. A conclusion that Officer Rodish came into contact with blood other than his own would, on this record, be based on mere speculation or conjecture. As a conviction cannot be supported by mere speculation or conjecture, *see Casady*, 491 N.W.2d at 787, we reverse McCullah's conviction for inmate assault against Officer Rodish.

However, we affirm McCullah's other three convictions for inmate assault. The evidence presented at trial established that Officer Harper and Deputies Purscell and Bracelin came into contact with blood during the altercation but did not suffer bleeding wounds of their own. Whether the blood they were exposed to came from McCullah or Rodish does not matter—it was not their own. Accordingly, we conclude the district court properly denied McCullah's motion for judgment of acquittal for the inmate assaults against Harper, Purscell, and Bracelin.

**IV. Conclusion.**

We conclude a conviction under Iowa Code section 708.3B may be sustained only upon proof that an employee came into contact with blood, seminal fluid, urine, or feces of someone else. We affirm McCullah's convictions for inmate assault against Officer Harper and Deputies Bracelin and Purscell, but we reverse his conviction for inmate assault against Officer Rodish.

**DECISION OF COURT OF APPEALS VACATED IN PART; DISTRICT COURT JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.**