**IN THE COURT OF APPEALS OF IOWA**

No. 3-1219 / 13-0582
Filed February 5, 2014

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**LUIS RAMON CRUZ AYABARRENO,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Hancock County, DeDra L. Schroeder, Judge.

A defendant appeals his first-degree robbery conviction. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, Maria Ruhtenberg, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Sharon Hall and Robert Sand, Assistant Attorneys General, and David Solheim, County Attorney, for appellee.

Considered by Doyle, P.J., and Tabor and Bower, JJ.

**TABOR, J.**

A Hancock County jury convicted Luis Ayabarreno of first-degree robbery after hearing his recorded confession to holding up a convenience store and stashing the proceeds at a relative's house. On appeal, Ayabarreno challenges the sufficiency of the store clerk's identification, a remark made by the prosecutor during closing argument, and his trial attorney's failure to object to the prosecutor's questions to the clerk concerning her reaction to the robbery.

Because evidence other than the clerk's description was sufficient to prove Ayabarreno's guilt beyond a reasonable doubt, we do not disturb the jury's verdict. Given the isolated nature of the prosecutor's comment during closing arguments, we find no abuse of discretion in the district court's denial of a motion for mistrial. Finally, based on the strong case against Ayabarreno, including his own confession, we find no reasonable probability the outcome of the trial would have been different had counsel objected to direct examination of the store clerk.

## I. Background Facts and Proceedings

By the end of her shift on November 25, 2011, store clerk Mendi Cuellar was exhausted. Before coming into work that afternoon at the Town Mart in Klemme, she had been out shopping at after-Thanksgiving, Black Friday sales. And because it was a holiday weekend, the convenience store saw a steady stream of customers that day. So when Cuellar noticed an individual that night walking up and down the street, watching the store, she did not think much of it.

As she was closing, she took the cash and checks out of the till and placed them in bank bags for deposit the next day. Just then, a masked man

came into the store and pulled a knife on her. He demanded: "Where's the money? Give me the money. Is that all the money?" Cuellar gave him three money bags. The man left and Cuellar locked the door and called 911.

Cuellar told the 911 operator the robber had covered most of his face with his hood and a bandana, but from what she could see, she believed his skin was "darker colored." Cuellar also told the operator she had "no idea" how old the robber was. Cuellar later informed investigators she believed he may have been a younger man based on his clothing and "the way he handled himself." Cuellar said the robber wore a hooded sweatshirt with "Carolina" written on it, flip-flops with socks, grey sweatpants, and a maroon or red bandana. While the robber only spoke a few sentences, Cuellar recalled he was soft-spoken, and she told investigators she did not detect an accent. The clerk also recalled the robber's hands looking orange, like a "someone with a bad spray tan."

While investigating the robbery, Hancock County Sheriff's Deputy Cory Leerar reviewed the store's surveillance video from that night and previous days. After reviewing the video, the deputy was able to identify a man entering the store, on an earlier occasion, wearing the Carolina sweatshirt described by Cuellar. The deputy was able to link the man wearing that sweatshirt to a red Chrysler Concorde with Minnesota plates. The Concorde was registered to Luis Ayabarreno. The deputy remembered seeing the vehicle parked in front of a home in Klemme. Further investigation uncovered that Maria Garcia, the sister of Ayabarreno's girlfriend, lived at the house. Ayabarreno and his girlfriend were in town at the time of the robbery visiting Garcia.

Based on this information, the police obtained a search warrant for the house and executed it on January 19, 2012. While the warrant was being executed, Iowa Division of Criminal Investigation Agent Chris Callaway was in Minnesota questioning Ayabarreno. Ayabarreno admitted robbing the Town Mart and described for the agent the exact location where the money bags were hidden in a chimney at his girlfriend's sister house in Klemme. Callaway relayed that information to the officers back in Iowa, and they found the money bags exactly where Ayabarreno said they were hidden. The police also found the "Carolina" sweatshirt, dark-colored flip-flops, and kitchen knives.

On January 31, 2012, the State charged Ayabarreno with robbery in the first degree, in violation of Iowa Code sections 711.1 and 711.2 (2011). A jury trial commenced on February 27, 2013, and the jury found Ayabarreno guilty as charged on February 28, 2013. On March 18, 2013, Ayabarreno filed a motion for a new trial and in arrest of judgment. After a hearing, the court denied the motion. The court sentenced Ayabarreno to an indeterminate twenty-five-year term in prison. He now appeals.

## II. Standard of Review

We review sufficiency of the evidence claims for correction of errors at law. *State v. Brubaker*, 805 N.W.2d 164, 171 (Iowa 2011). We review claims of prosecutorial misconduct for an abuse of the district court's discretion. *State v. Greene*, 592 N.W.2d 24, 30–31 (Iowa 1999). An appellate court will find abuse only if the district court "acts on grounds clearly untenable or to an extent clearly unreasonable." *State v. Krogmann*, 804 N.W.2d 518, 523 (Iowa 2011).

Generally, we review an evidentiary ruling for an abuse of discretion. *State v. Belken*, 633 N.W.2d 786, 793 (Iowa 2001). But when the claim involves constitutional rights, such as ineffective assistance of counsel, we review de novo. *Osborn v. State*, 573 N.W.2d 917, 920 (Iowa 1998).

**III. Analysis**

**A. Did the State offer substantial evidence to support Ayabarreno's conviction?**

Ayabarreno argues the victim's description of the robber was not sufficient to support his identification as the perpetrator and eventual conviction.

In reviewing challenges to the sufficiency of evidence supporting a guilty verdict, we examine the evidence in the record in the light most favorable to the State, including any fair inferences, which would support the verdict. *State v. Lamb*, 573 N.W.2d 267, 268 (Iowa 1998). If substantial evidence supports the verdict, we will affirm. *State v. Quinn*, 691 N.W.2d 403, 407 (Iowa 2005). Substantial evidence is the kind of proof that would convince a rational jury the defendant is guilty beyond a reasonable doubt. *See State v. McCullah*, 787 N.W.2d 90, 93 (Iowa 2010). It is not enough for evidence to raise "suspicion, speculation, or conjecture" as to the defendant's guilt. *Id.*

We find the evidence sufficient to support the jury's verdict. To establish Ayabarreno's guilt on the first-degree robbery charge the State was required to prove he (or someone he aided and abetted) had the specific intent to commit a theft, committed an assault on Mendi Cuellar or threatened her with or

purposefully put her in fear of immediate serious injury, and he was armed with a dangerous weapon. *See* Iowa Code §§ 711.1(1), 711.2.

Ayabarreno claims Cuellar's identification was insufficient to support the verdict. He points out the store clerk described the robber as appearing to be black, younger, and having no accent, while he is Hispanic, similar in age to Cuellar, and speaks with an accent. Cuellar testified at trial she could not identify Ayabarreno as the robber because the robber covered his face.

We agree with Ayabarreno that Cuellar's misperception of his ethnicity and age do not assist in proving his guilt. But that does not end our analysis. We find ample evidence, apart from her description, to support the conviction.

After the report of the robbery, Deputy Leerar took the time to review surveillance tapes from the store. He was able to verify the robber was wearing a grey "Carolina" sweatshirt and saw that sweatshirt worn into the store on earlier occasions by an individual driving a red Chrysler Concorde with Minnesota plates, registered to Ayabarreno. The deputy had noticed that car parked at a home in Klemme over the Thanksgiving holiday. With this information, the officer obtained a warrant to search that home where Ayabarreno's girlfriend's sister lived. Inside the home, the officers found the "Carolina" sweatshirt in a suitcase.

DCI Agent Callaway confronted Ayabarreno with news that officers found the sweatshirt. Ayabarreno eventually told the agent where the officers could find the money bags hidden in his girlfriend's sister's chimney. Ayabarreno also admitted to Agent Callaway that he was walking outside the store for about one-half hour before going inside to commit the robbery.

Because of the solid police work after the robbery, the clerk's inability to identify the robber was not fatal to the State's case. Viewing the evidence in the light most favorable to the verdict, we find sufficient evidence to support the robbery conviction.

### B. Did the prosecutor commit misconduct in closing argument?

The prosecutor ended his closing argument with this sentiment:

Combined with his confession, and the details that he knew about the crime, I trust that you'll see fit to find the defendant guilty of robbery in the first degree, and to give Mendi Cuellar some peace of mind knowing that justice has been done. Thank you.

Ayabarreno objected outside the presence of the jury and moved for a mistrial based on the prosecutor's request that the jury do justice for the robbery victim. The defense characterized the statement as prosecutorial misconduct and asked that it be stricken from the record. The prosecutor did not assert his references to the victim's "peace of mind" and doing "justice" were permissible but also did not concede they were improper. The prosecutor resisted the defense request for a mistrial by saying the jury could be instructed to disregard his final remark.

The district court denied the mistrial motion but instructed the jurors that they were "not to place [themselves] into the position of the alleged victim or the defendant in this case."

On appeal, Ayabarreno contends the district court abused its discretion in not granting the mistrial motion. He argues the prosecutor violated the prohibition against "golden rule" arguments in his closing statement by asking the jury to "give Mendi Cuellar some peace of mind knowing that justice has been

done." A "golden rule" argument is where counsel asks the jurors to put themselves in the place of a party or victim. Courts frown upon this type of appeal to the emotions or personal interests of the jurors. *See State v. Musser*, 721 N.W.2d 734, 754 (Iowa 2006); *see also United States v. Palma*, 473 F.3d 899, 902 (8th Cir. 2007). The prosecutor's remark here was not a blatant attempt to misdirect the jury. The prosecutor did not ask the jurors to place themselves in the shoes of the robbery victim. *See State v. Rice*, 652 S.E.2d 409, 426 (S.C. Ct. App. 2007) (finding prosecutor's request that jury give the murder victim's wife "peace" and the victim "justice" did not rise to the level of a golden rule argument) *overruled on other grounds by State v. Byers*, 710 S.E.2d 55 (S.C. 2011); *see also State v. Kinney*, No. 03-1149, 2005 WL 291529 at *3 (Iowa Ct. App. Feb. 9, 2005) (finding nothing objectionable in closing argument asking court to "give these women justice" and find the defendant responsible for the crimes).

But even if the prosecutor's statement impermissibly diverted the jury's attention from the evidence and tried to obtain a conviction based on sympathy for the victim, we find the statement was isolated and remedied by the district court's curative instruction. *See Belken*, 633 N.W.2d at 796 n.1 (presuming jury adhered to curative instructions).

In determining whether prejudice resulted from prosecutorial misconduct, we consider several factors within the context of the entire trial. *State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003). These factors include the severity and pervasiveness of the misconduct, the significance of the misconduct to the central issues in the case, the strength of the State's evidence, the use of

cautionary instructions or other curative measures, and the extent to which the defense invited the improper conduct. *Id.* In this case, the misconduct, if any, was isolated and had little significance given the defendant's admissions to the robbery. Moreover, the district court was in a better position to determine if the prosecutor's remark required a mistrial or could be addressed with a cautionary instruction. *See State v. Brotherton*, 384 N.W.2d 375, 381 (Iowa 1986). We find no abuse of discretion in the denial of the mistrial.

**C.    Was trial counsel ineffective in failing to object to the store clerk's testimony about the after-effects of the robbery?**

To prevail on his claims of ineffective assistance of counsel, Ayabarreno must show (1) counsel failed to perform an essential duty and (2) prejudice resulted. *See State v. Lane*, 726 N.W.2d 371, 393 (Iowa 2007). Improvident trial strategy, miscalculated tactics, or mistakes in judgment do not necessarily amount to ineffective assistance of counsel. *Osborn v. State*, 573 N.W.2d 917, 922 (Iowa 1998). To prove prejudice, he must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See id.*

We evaluate the totality of the relevant circumstances in a de novo review. *Lane*, 726 N.W.2d at 392. Generally, we do not resolve claims of ineffective assistance of counsel on direct appeal. *State v. Biddle*, 652 N.W.2d 191, 203 (Iowa 2002). We prefer to leave such claims for postconviction relief proceedings. *State v. Lopez*, 633 N.W.2d 774, 784 (Iowa 2001). But when the

record is adequate, as it is here, we will resolve them. *State v. Coil*, 264 N.W.2d 293, 296 (Iowa 1978).

Ayabarreno faults his counsel for failing to object to the State's questioning of Cuellar about her continued fear after the robbery. He believes the testimony was irrelevant and unfairly prejudicial.

Near the end of Cuellar's direct testimony, the State played the recording of her 911 call. The prosecutor then asked the witness if her life had changed as a result of the robbery. She replied, "most definitely," and detailed several steps she has taken to be more cautious, for instance, locking her house and carrying a concealed weapon. She also testified she did not sleep well after the robbery because she did not feel safe. The exchange included eight questions and answers. Defense counsel did not interpose any objections.

We first note the State was required to prove, as an element of robbery, that Ayabarreno threatened or purposely placed the victim in fear. *See* Iowa Code § 711.1. Defense counsel could have reasonably determined no ground existed to object because the victim's reaction to the crime was relevant to the fear element of the robbery offense. *See generally State v. Reynolds*, 670 N.W.2d 405, 414 (Iowa 2003) ("Whether a particular victim was actually alarmed by a defendant's conduct is probative of whether such a reaction is a natural consequence of that type of conduct. The fact the victim's alarm is a typical response to such conduct tends to establish that a person acting as the defendant did should expect such a result.").

Moreover, regardless of any duty to object, we do not find prejudice resulted from the questioning. First, the prosecutor's line of inquiry was fairly limited. Second, as we stated above, the State offered strong evidence of Ayabarreno's guilt—including his confession with knowledge of the precise location of the robbery proceeds; a videotape of the robbery; and the recovery of clothes that matched the description of those worn by the robber. We find no reasonable probability the jury's verdict would have been different had the store clerk not testified concerning the after-effects of the crime.

**AFFIRMED.**