# IN THE COURT OF APPEALS OF IOWA

No. 18-1737
Filed July 1, 2020

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**MARIO GOODSON,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Joel Dalrymple (trial and post trial motions), Linda M. Fangman (enhancement stipulation hearing), and George L. Stigler (sentencing), Judges.


Defendant appeals his convictions and sentence for first-degree burglary, operating a motor vehicle without its owner's consent, domestic abuse assault causing bodily injury, and third-degree sexual abuse. **CONVICTIONS AFFIRMED, SENTENCE VACATED IN PART, AND REMANDED FOR RESENTENCING.**

Martha J. Lucey, State Appellate Defender, and Vidhya K. Reddy, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Heard by Vaitheswaran, P.J., and Doyle and May, JJ.

**MAY, Judge.**

A jury convicted Mario Goodson of first-degree burglary, operating a motor vehicle without its owner's consent, domestic abuse assault causing bodily injury, and third-degree sexual abuse. On appeal, he raises several arguments, including: (1) bad-acts evidence was improperly admitted; (2) the trial judge should have recused himself from the trial and the hearings on the post-trial motions; (3) the first-degree burglary and third-degree sexual abuse offenses should merge; and (4) Goodson's sentence is illegal because it specifies a duration for sex-offender-registry obligations. We affirm the convictions. But we vacate the sentence in part and remand for resentencing.

## I. Background Facts and Proceedings

We summarize the evidence in the light most favorable to the verdict. Goodson began a relationship with A.T. in November 2014. Goodson moved into A.T.'s house in the summer of 2015. In March 2016, A.T. gave birth to their child. Around that time, Goodson became abusive toward A.T. And then things got worse. By September, A.T. kicked Goodson out of her house.

Even so, their relationship did not end. A.T. kept in touch with Goodson to arrange childcare for their son. And she sometimes let Goodson spend the night at her house.

Things changed on December 8. That day, A.T. either called or texted Goodson from work. She told him she was seeing someone else. Goodson responded by threatening to kill her.

Later that day, A.T. left work and headed to her car. She spotted Goodson's mother's car—and she knew it was Goodson. She tried to run back into the

building.  But Goodson caught her, put her in a headlock, took her keys, and forced her into the back seat of his mom's car.  Goodson slapped her and took her phone to search it.  Eventually, A.T. convinced Goodson to let her go by telling him she would meet him back at her house.  But she did not meet him.  She stayed at her mother's instead.

A.T. did not see Goodson again until December 23.  A.T. and her son arrived at her home in the afternoon.  When A.T. went to unlock the front door, she realized the deadbolt had been locked—from the inside.  So she went to the side door.  As she tried to unlock it, the door opened.  It was Goodson.  He grabbed her coat and pulled her in the house.  A.T. could tell he was very angry.

Goodson took A.T.'s phone and began searching through it.  A.T. headed to the bathroom but Goodson followed.  Goodson hit her in the face.  A.T. felt blood "gushing out" of her nose.  Then Goodson slammed her head into the vanity mirror, shattering the glass.

The two moved to the living room while Goodson continued searching through A.T.'s phone.  A.T. tried to sneak out while he was distracted—but Goodson noticed.  So he kicked the coffee table to block the front door.  Later, when she again thought Goodson was distracted with her phone, A.T. grabbed a mace gun out of the coffee table.  But Goodson took it from her, threw her to the ground, and hit the mace gun against her head repeatedly.  At some point, the mace exploded.  Goodson went to the kitchen to wash mace off himself.  A.T. took her son to the kitchen and put him in a high chair.

Goodson then told A.T. to go to the basement.  She resisted, fearing he might be planning to kill her.  But he forced her down the stairs.

In the basement, Goodson continued looking through her phone. A.T. thought this was only making Goodson angrier. So A.T. grabbed her phone away from Goodson and smashed it on the ground. After that, Goodson seemed calmer, and he even allowed A.T. to go back upstairs.

A.T. and the child took a shower to wash off any mace on them. Goodson joined them. Hoping to give Goodson more time to calm down, A.T. and the child laid down on a bed upstairs.

After a while, Goodson came upstairs. He was angry again about what he found on her phone. He told her, "[Y]ou're gonna give me the same respect you gave to those [racial slur (plural)], and you're going to give it to me like you gave it to them." A.T. understood this to mean she had to have intercourse with Goodson. A.T. was scared. The two had nonconsensual intercourse.

After, Goodson got dressed and left to go to the doctor, complaining of leg pain stemming from the December 8 incident. Once he was gone, A.T. packed up her child and tried to leave. She realized her keys and car were missing. Goodson had taken them without her permission. So A.T. went to a neighbor's house and called 911.

A jury trial commenced on February 27, 2018. On March 6, the jury found Goodson guilty of first-degree burglary,[1] operating a motor vehicle without its owner's consent,[2] domestic abuse assault causing bodily injury,[3] and third-degree sexual abuse.[4]

---

[1] Iowa Code § 713.3 (2016).
[2] Iowa Code § 714.7
[3] Iowa Code § 708.2A(2)(b)
[4] Iowa Code § 709.4(1)(a)

On April 5, Goodson filed a motion for new trial. He alleged, among other things, there was an "appearance of impropriety" due to the trial judge's interactions with two jurors. Following a hearing, the trial judge entered an order denying Goodson's motion.

On August 9, a different judge conducted a hearing to determine whether the sentencing enhancement under section 901A.2 (3)[5] would apply. The court conducted a thorough colloquy. Goodson admitted he had been previously convicted of an offense that would trigger the enhancement, namely, a 1999 conviction for sexual abuse in the third degree. The court accepted Goodson's admission.

On August 15, Goodson filed a second motion for new trial based upon alleged "newly discovered evidence." It alleged the trial judge had been a prosecutor for Goodson's 1999 sexual-abuse conviction. Following a hearing, the trial judge entered an order denying Goodson's motion. The order noted the trial judge "had no personal knowledge or recollection of Goodson" from the 1999 case. Moreover, the order noted, the trial judge had "no involvement . . . regarding the enhancement." Nevertheless, "[i]n an abundance of caution," the order directed that Goodson's sentencing would be "reassigned to a different judge."

A third judge sentenced Goodson. He now appeals.

---

[5] Iowa Code chapter 901A provides for sentencing enhancements for repeated "sexually predatory offenses." Section 901A.2(3) provides an enhancement for "a person convicted of a sexually predatory offense which is a felony, who has a prior conviction for a sexually predatory offense." Sexual abuse in the third degree is a "sexually predatory offense" and a class "C" felony. *See* Iowa Code §§ 709.4(2), 901A.1(1)(a).

## II. Analysis

### A. Bad-Acts Evidence

Goodson argues the district court erred in admitting evidence of Goodson's prior bad acts. The parties agree error was preserved as to some of this evidence, namely: (1) a surveillance video from the December 8 incident at A.T.'s workplace, (2) the mention of an arrest warrant arising from the December 8 incident, and (3) a neighbor's testimony that, on one prior occasion, he saw Goodson hit A.T.[6]

Our review of the admission of prior-bad-acts evidence is for abuse of discretion. *State v. Putnam*, 848 N.W.2d 1, 8 (Iowa 2014). "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Iowa R. Evid. 5.404(b)(1). But it "may be admissible for another purpose such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Iowa R. Evid. 5.404(b)(2).

We use a three-step analysis to determine whether prior bad-acts evidence is admissible.

> The three steps are (1) "the evidence must be relevant and material to a *legitimate* issue in the case other than a general propensity to commit wrongful acts"; (2) "there must be clear proof the individual against whom the evidence is offered committed the bad act or

---

[6] Goodson concedes error was not preserved as to certain other bad-acts evidence. But Goodson claims counsel's failure to object to this evidence constituted ineffective assistance of counsel. Pursuant to *State v. Macke*, we are not prohibited from considering such claims in this appeal. 933 N.W.2d 226, 228 (Iowa 2019). As will be explained, however, we find evidence of Goodson's prior acts of domestic violence toward A.T. were properly admitted. So counsel had no duty to object. *See State v. Phillips*, 610 N.W.2d 840, 844 (Iowa 2000) ("Because we have rejected all of Phillips' arguments on their merits, we need not address the claim of ineffective assistance of counsel she has raised to excuse her trial counsel's failure to preserve error in the district court.").

crime"; and (3) if the first two prongs are satisfied, "the court must then decide if [the evidence's] probative value is substantially outweighed by the danger of unfair prejudice to the defendant."

*State v. Richards*, 879 N.W.2d 140, 145 (Iowa 2016) (alteration in original) (quoting *State v. Sullivan*, 679 N.W.2d 19, 25 (Iowa 2004)).

We start with step one. Goodson seems to argue that evidence of prior abuse would only have been relevant if Goodson's intent were at issue. And he claims intent was not at issue because Goodson "admitted that he got 'pissed' and hit or backhanded A.T. during the December 23 incident."

But bad-acts evidence is admissible if the evidence is relevant to any "legitimate issue in the case other than a general propensity to commit wrongful acts." *Id.* (emphasis omitted) (citation omitted). Here, the district court allowed the evidence of the prior abuse because it "adequately frame[d] the nature of the parties' relationship." And even more, the district court found the evidence was relevant because Goodson claimed he and A.T. had consensual intercourse while A.T. claimed the intercourse was nonconsensual and procured by Goodson's threats.

We agree with the district court. Through their testimony, Goodson and A.T. provided two entirely different stories about December 23. A.T. claimed Goodson entered her home without permission, assaulted her, used threats to procure nonconsensual intercourse, and took her car without permission. Goodson claimed the two were living together, A.T. started an argument, they reconciled, they had consensual intercourse, and she gave him permission to take the car. As in *State v. Taylor*, "[e]vidence reflecting the nature of the relationship between" Goodson and A.T. "would be crucial to a fact finder resolving the inconsistencies

in the witnesses' testimony." *See* 689 N.W.2d 116, 127 (Iowa 2004); *see also id.* at 128 n.6 ("The relationship between the defendant and victim, especially when marked by domestic violence, sets the stage for their later interaction."); *State v. Frederick*, No. 18-2082, 2019 WL 6358437, at *2 (Iowa Ct. App. Nov. 27, 2019) (finding "conflicting evidence rendered the issue of identity a legitimate issue in dispute").

We move to step two—whether there was clear proof Goodson committed the bad acts. *See Richards*, 879 N.W.2d at 145. Goodson alleges the neighbor's testimony and the incident on December 8 do not satisfy the clear-proof standard. "In assessing whether there is clear proof of prior misconduct, it is not required that the prior act be established beyond a reasonable doubt, nor is corroboration necessary." *Taylor*, 689 N.W.2d at 130. "There simply needs to be sufficient proof to 'prevent the jury from engaging in speculation or drawing inferences based on mere suspicion.'" *Id.* (quoting *State v. Brown*, 569 N.W.2d 113, 117 (Iowa 1997)).

A.T.'s neighbor testified that he remembered a time, before December 2016, when he was on his front porch and witnessed Goodson punch A.T. Specifically, he stated, "I certainly saw [Goodson] punch [A.T.] in the face for sure." And A.T. testified she recalled this incident and that the neighbor witnessed it. This satisfies the clear-proof standard.

The same is true for the December 8 incident. A.T. testified about what happened that day. *See Richards*, 879 N.W.2d at 152 ("[A] victim's testimony, standing alone, satisfies the requirement of clear proof." (alteration in original) (citation omitted)). And there is a video from A.T.'s workplace showing A.T. trying to run back into the building, Goodson chasing after, and Goodson ultimately

catching A.T. and forcing her to leave with him. This evidence is sufficient to "prevent the jury from engaging in speculation or drawing inferences based on mere suspicion." *Taylor*, 689 N.W.2d at 130 (citation omitted). It satisfies the clear-proof standard.

The final step is to determine if the probative value of the bad-acts evidence is substantially outweighed by any unfair prejudice. *See Richards*, 879 N.W.2d at 145 (citation omitted). "In considering whether the trial court abused its discretion in deciding the probative value of evidence of the defendant's prior bad acts was not substantially outweighed by its unfair prejudice, we first examine 'the actual need for the . . . evidence in . . . light of the issues and the other evidence available.'" *Taylor*, 689 N.W.2d at 129 (quoting *State v. Wade*, 467 N.W.2d 283, 284 (Iowa 1991)).

Again, considering the conflicting evidence from A.T. and Goodson—the "he said/she said" nature of their dispute—the need for additional evidence about their relationship was very high. *See State v. Rodriquez*, 636 N.W.2d 234, 242 (Iowa 2001) (noting the defendant and victim were the only individuals present for an alleged confinement and concluding "[i]n light of the 'he said/she said' nature of this disagreement, the need for other evidence on the issue of confinement was substantial"). And while evidence of prior assaults may have been prejudicial to Goodson, it was not *unfairly* prejudicial. *See Pexa v. Auto Owners Ins. Co.*, 686 N.W.2d 150, 158–59 (Iowa 2004) ("The adverse effect of relevant evidence due to its probative value is not unfair prejudice."). "No witness including a defendant who elects to testify in his own behalf is entitled to a false aura of veracity." *Taylor*, 689 N.W.2d at 130 (Iowa 2004) (quoting *People v. Zack,* 229 Cal. Rptr. 317, 320 (Cal.

Ct. App. 1986)).  Goodson "was not entitled to have the jury determine his guilt or innocence on a false presentation that" his relationship with A.T. was "peaceful and friendly."  *See id.* (quoting *Zack*, 229 Cal. Rptr. at 320).  Rather, it was proper for the jury to see a fuller picture that included Goodson's history of violence toward A.T.  *See id.*  Like the district court, we conclude the probative value of that additional evidence was not substantially outweighed by a risk of unfair prejudice. And we find no error in its admission.

### B. Recusal

Next, Goodson complains of the trial judge's failure to recuse himself from the jury trial and the hearings on Goodson's post-trial motions.  He contends the trial judge should have recused himself for two reasons: (1) the trial judge had improper contact with two jurors and (2) in 1999, the trial judge prosecuted Goodson on a sexual-abuse charge that now underlies his sentencing enhancement.  But the State contends Goodson has not preserved error on any of these claims.  And we agree.

Goodson was found guilty in March 2018.  He filed his first motion for new trial in April.  There he asserted the trial judge's contact with two jurors gave rise to "an appearance of impropriety" that warranted a grant of new trial.  But nowhere in this first motion did Goodson request recusal by the trial judge.

In August 2018, Goodson filed a second motion for new trial.  This time, he argued the trial judge had been a prosecutor on his 1999 sexual-abuse case. Because this information was never disclosed to the defense, Goodson argued, a new trial should be granted with a different presiding judge.  This was the first time Goodson asked the trial judge to recuse himself.

In *State v. Biddle*, our supreme court held a recusal claim raised for the first time in a motion for new trial "was too late." 652 N.W.2d 191, 198 (Iowa 2002). And Goodson did not even raise this issue until his *second* motion for new trial. So his claims that the trial judge should have recused himself from trial are not preserved.

Nor did he preserve his claims that the trial judge should have recused himself from the hearing on his motion for new trial. "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). Goodson may not raise this issue for the first time on appeal. *See id.* We again find error was not preserved.[7] So we do not address Goodson's arguments.

## C. Merger/Double Jeopardy

Goodson next claims his first-degree burglary and third-degree sexual abuse offenses should merge. We disagree.[8]

---

[7] It bears adding that Goodson does not actually claim he preserved error on his recusal issues. Instead, Goodson cites to Iowa Code of Judicial Conduct Rule 51:2.11(A). He contends that, because the trial judge had an ethical duty to recuse on his own motion, error preservation is not required. We disagree. Goodson has not cited, and we did not find, authority to support this theory. Goodson does cite *State v. Toles*, No. 15-0321, 2016 WL 1358959, at *1 (Iowa Ct. App. Apr. 6, 2016), *aff'd in part by* 885 N.W.2d 407, 408 (Iowa 2016), in which our court faced a similar error-preservation issue. But we read *Toles* as bypassing the issue rather than resolving it. *See id.* at *1–2; *see, e.g.*, *State v. Taylor*, 596 N.W.2d 55, 56 (Iowa 1999) ("We choose to pass Taylor's serious preservation-of-error problems and affirm on the merits."). And it is significant that the defendant in *Toles* also raised the recusal issue under the ineffective-assistance rubric, which the court described as "an exception to traditional error preservation rules." 2016 WL 1358959, at *1. Goodson has not raised a similar theory here.

[8] The State claims Goodson's argument is an attack on the jury instructions. And because Goodson did not object to the instructions at trial, error was not preserved

Our merger statute is Iowa Code section 701.9. It states, "No person shall be convicted of a public offense which is *necessarily included* in another public offense of which the person is convicted." Iowa Code § 701.9 (emphasis added). Our supreme court has said section 701.9 codifies constitutional double jeopardy protections. *State v. Halliburton*, 539 N.W.2d 339, 344 (Iowa 1995). The court has also held "the question of whether an offense is necessarily included in a greater offense is a question of legislative intent." *State v. West*, 924 N.W.2d 502, 512 (Iowa 2019).

"Our quest for legislative intent takes two steps." *State v. Johnson*, No. 19-0109, 2020 WL 1307839, at *2 (Iowa Ct. App. Mar. 18, 2020). "[W]e first decide whether the crimes meet the legal elements test," sometimes called the *Blockburger*[9] test. *Halliburton*, 539 N.W.2d at 344. If that test is satisfied, "we then study whether the legislature intended multiple punishments for both offenses." *Id.*

So we begin with the legal elements test, which requires us to determine whether "it is impossible to commit the greater offense without also committing the lesser offense." *State v. Jeffries*, 430 N.W.2d 728, 740 (Iowa 1988). "If the lesser offense contains an element not required for the greater offense, the lesser cannot be included in the greater." *Id.* "This is because it would be possible in that situation to commit the greater without also having committed the lesser." *Id.*

In this case, the instruction on first-degree burglary stated:

---

and the claim fails. But our supreme court has said the "district court's failure to merge convictions as required by statute results in an illegal sentence. Such claims may be raised at any time." *State v. Love*, 858 N.W.2d 721, 723 (Iowa 2015). So we proceed to the merits of Goodson's claim.

[9] *See Blockburger v. United States*, 284 U.S. 299, 304 (1932) (setting out the elements test).

1. On or about the 23rd day of December, 2016, the defendant broke or entered into [A.T.'s home].

2. The residence was an occupied structure . . . .

3. One or more persons were present in the occupied structure.

4. The defendant:

a. did not have permission or authority to break or enter into the residence, or

b. did not have permission or authority to remain in the residence, or

c. The defendant's permission or authority to remain in the residence had ended.

5. The defendant did so with intent to commit an assault . . . .

6. During the incident:

a. The defendant intentionally or recklessly inflicted bodily injury . . . on [A.T.], or

b. The defendant performed or participated in a sex act . . . with [A.T.] which would constitute sexual abuse as defined in [the third-degree sexual abuse instruction].

The jury instruction on third-degree sexual abuse stated: (1) "On or about the 23rd day of December, 2016, the defendant performed a sex act with [A.T.]" and (2) "[t]he defendant performed the sex act by force or against the will of [A.T.]."

Considering only these instructions, we see no element of third-degree sexual abuse that is not contained within the first-degree burglary offense. *Cf. State v. McGowan*, No. 02-0537, 2003 WL 1524533, at *2 (Iowa Ct. App. Mar. 26, 2003) (finding merger was inappropriate when "[t]he instruction for first-degree burglary required the State to prove only that McGowan had the specific intent to commit sexual abuse" whereas "the instruction for third-degree sexual abuse required the State to prove that McGowan committed a sex act"). Indeed, the State "agrees with Goodson's point that [the sexual abuse alternative] subsumes the marshalling instruction for the charge of third-degree sexual abuse into the analysis, which seems like it would fit the preliminary test for merger in *Blockburger* and section 709.1." But the State argues that, because the burglary instruction

also included the domestic-abuse alternative, "it would be incorrect to state that establishing first-degree burglary *required* proof of sexual abuse."

Our supreme court has held, however, that "[i]f the greater offense is defined alternatively and the State charges both alternatives, the test for included offenses must be applied to each alternative." *State v. Hickman*, 623 N.W.2d 847, 851 (Iowa 2001). So "[w]hen alternatives are present and one alternative requires merger, merger is required if it is impossible to determine which alternative the jury used." *Bryson v. State*, 886 N.W.2d 860, 864 (Iowa Ct. App. 2016).

Here, though, the State contends "it is clear" the jury found *both* alternatives satisfied. This is true, the State argues, because "[t]he jury convicted Goodson on charges of third-degree sexual abuse *and* domestic abuse causing bodily injury" in addition to first-degree burglary. As Goodson points out in his reply brief, though, it is not so clear. The domestic-abuse alternative for first-degree burglary required a showing that: "The defendant intentionally or recklessly inflicted bodily injury." But the instruction for the domestic-abuse charge *did not* require the jury to find that Goodson acted "intentionally" or "recklessly."[10] So it is uncertain

---

[10] The domestic abuse assault instruction provides:
> 1. On or about the 23rd day of December, 2016, the defendant did an act which was intended to cause pain or injury to [A.T.], or did an act that resulted in physical contact which was insulting or offensive to [A.T.], or placed [A.T.] in fear of an immediate physical contact which would have been painful, injurious, insulting or offensive to [A.T.].
> 2. The defendant had the apparent ability to do the act.
> 3. The defendant's act caused a bodily injury . . . to [A.T.].
> 4. The act occurred between persons who are the parents of the same minor child or persons who have been family or household members residing together within the past year but not residing together at the time of the incident.

whether the jury found Goodson had the necessary intent under the domestic-abuse alternative for first-degree burglary.  And so we cannot say the jury actually found the domestic-abuse alternative instead of the sexual-abuse alternative.

So we conclude the elements test has been met.  Even so, we must explore the larger question of legislative intent.  "Although the [elements] test has been characterized as giving rise to a presumption of sorts" that the crimes merge, "that presumption may be overcome by a clear expression of legislative intent to impose multiple punishments."  *West*, 924 N.W.2d at 507; *accord State v. Anderson*, 565 N.W.2d 340, 344 (Iowa 1997) ("[E]ven if one offense is a lesser-included offense of another under our elements test, the legislature may intend punishment under both statutes.").

We find the legislature's intent in the words of the Iowa Code.  Our study of the Code is guided by *West.*  924 N.W.2d at 511.  *West* explained that, when the legislature has established a penalty for the greater offense "that is not in excess" of the penalty for the lesser-included offense, "a legislative intent to permit multiple punishments arises."  *Id.*  That is the case here.  For the offense of first-degree burglary, Goodson faces an indeterminate term not to exceed twenty-five years.  This punishment "is not in excess" of the penalty Goodson faces for the sexual-abuse charge, namely, a prison sentence of twenty-five years that "shall not" be "reduced" through earned time or otherwise "by more than fifteen percent."  *See*

---

As Goodson explains in his reply brief, "[w]hile one alternative of element 1 . . . would have required a finding of intent to inflict pain or injury, the other two alternatives would not have required any finding of intent (nor any finding of recklessness); and the jury was told it could convict on *any one* of the listed alternatives."

*id.*; *see also* Iowa Code § 901A.2(3) (stating "a person convicted of a sexually predatory offense which is a felony, who has a prior conviction for a sexually predatory offense, shall be sentenced to and shall serve . . . twenty-five years . . . notwithstanding any other provision of the Code to the contrary"; further stating "[a] person sentenced under this subsection shall not have the person's sentence reduced under chapter 903A or otherwise by more than fifteen percent"). *See generally* Iowa Code chapter 903A (providing procedures through which inmates can earn reductions of their sentences). This shows the legislature intended multiple punishments.

As Goodson emphasizes, though, his sentence for the sexual-abuse charge is greatly increased by his recidivism. If this had been Goodson's first conviction of sexual abuse in the third degree, his prison sentence would have only been an indeterminate term not to exceed ten years. *See State v. Tripp*, 776 N.W.2d 855, 857 (Iowa 2010) (citing Iowa Code §§ 709.4, 902.9). Because this is Goodson's second conviction for the same crime, though, section 901A.2(3) requires that he serve at least eighty-five percent of a twenty-five-year term. *See State v. Bruegger*, 773 N.W.2d 862, 885 (Iowa 2009) (noting offenders sentenced under Iowa Code section 901A.2(3) "must serve at least 21.25 years in prison"). In Goodson's view, though, enhancements should not be considered in our merger analysis. And so, because the unenhanced punishment for the sexual-abuse charge is less than the punishment for the first-degree burglary charge (an indeterminate term not to exceed twenty-five years), Goodson argues the charges should merge.

We disagree.[11] Just as the legislature wrote the statutes creating the crimes of first-degree burglary and third-degree sexual abuse, *see* Iowa Code §§ 709.4 and 713.3, as well as the statutes establishing the "unenhanced" punishments for those crimes, *see* Iowa Code § 902.9, the legislature also wrote section 901A.2(3) and its enhancement. And if our duty is to determine the legislature's intent, then we must consider all of the legislature's words, including the enhancement. *See, e.g.*, *State v. McCullah*, 787 N.W.2d 90, 94 (Iowa 2010) ("To ascertain the legislature's intent, we will assess 'the statute in its entirety, not just isolated words or phrases,' and we will seek to interpret it so that no part of it is rendered redundant or irrelevant.").

So we believe we must consider Goodson's *actual*, enhanced punishment, rather than the hypothetical, unenhanced punishment he might have faced under a different code or with a different history. This view meshes well with the logic of *West*. *See* 924 N.W.2d at 511. There the court said:

---

[11] The cases cited by Goodson do not support a different view. *State v. Tobin* addressed the *elements* test, not the broader legislative purpose inquiry. 333 N.W.2d 842, 845 (Iowa 1983) ("Section 714.2(2) makes a class 'D' felony of 'the theft of any property not exceeding five hundred dollars in value by one who has before been twice convicted of theft . . . .' The prior convictions are a predicate for enhanced punishment rather than elements of the current theft charge."). And the *Tobin* court noted "[i]t is well established that the use of prior convictions to enhance punishment does not violate the constitutional stricture against double jeopardy." *Id.* Conversely, neither double jeopardy nor merger were discussed in *State v. Woody*, 613 N.W.2d 215, 217 (Iowa 2000) (addressing requirements for habitual offender enhancement under sections 902.8 and 902.9(2)), or *State v. Klemme*, No. 10-0859, 2011 WL 2112463, at *4 (Iowa Ct. App. May 25, 2011) (noting a district associate judge could preside over serious misdemeanor case even though, because of recidivist enhancement, defendant faced potential punishment of incarceration for up to ten years).

> In this case, if the offenses merged, a person convicted of both involuntary manslaughter by public offense and delivery of a controlled substance would receive a lesser sentence than a defendant convicted solely of delivery of a controlled substance. It is hard to imagine that the legislature intended this result.

*Id.* at 511–12. Likewise, if Goodson's offenses merged, Goodson would receive "a lesser sentence" for committing *both* first-degree burglary *and* third-degree sexual abuse than Goodson would have received if he had *only* committed third-degree sexual abuse. As in *West*, "[i]t is hard to imagine that the legislature intended this result."[12] *Id.* at 512.

Moreover, we agree with the State that, even if we disregard Goodson's prior conviction, merger would still be inappropriate. If this were Goodson's first sexual-abuse offense, it would be necessary to enter a conviction for that offense so that—if he should reoffend—the enhancement under section 901A.2(3) could be given effect. Likewise, even if this were Goodson's first sexual-abuse offense, it would be necessary to convict him of that offense so that the lifetime special sentence under section 903B.1 could be imposed. *Cf. State v. Rice*, 661 N.W.2d 550, 552 (Iowa Ct. App. 2003) (determining merger of operating while intoxicated and eluding offenses would not be appropriate because it "would thwart the legislative design of 321J.2 and its subparts, which detail a number of offense-specific sentencing provisions, including mandatory minimums and subsequent-

---

[12] As a fallback position, Goodson suggests that, if the sexual-abuse punishment is greater than the burglary punishment (as it is), then they both should merge into the sexual-abuse charge. The problem is the elements test; although Goodson could not have committed first-degree burglary as marshalled without committing sexual abuse as marshalled, he certainly could have committed sexual abuse without committing burglary. So the burglary charge is not "necessarily included in" the sexual-abuse charge, an essential prerequisite to merger. *See* Iowa Code § 701.9.

offense enhancements"). So we think sections 901A.2(3) and 903B.1 both suggest a legislative intent to enter a conviction for a defendant's first sexual-abuse offense *even if* it is committed at the same time as another crime, like first-degree burglary.

Finally, we note that "[f]urther evidence of the legislature's intent is found in the differing purposes of these statutes." *Halliburton*, 539 N.W.2d at 344. Although sexual abuse can be an aggravating factor under the burglary statute, it is not required for every first-degree burglary, much less every burglary. *See generally* Iowa Code ch. 713. Although sex is mentioned in the burglary statute, it is not the focus. *See, e.g.*, Iowa Code §§ 713.3(1)(d), 713.3(3), 713.5(3), 713.6(3). Rather, the primary purpose of burglary statutes is to prevent felonious invasions of occupied structures. *See State v. Sanford*, 814 N.W.2d 611, 617 (Iowa 2012) (noting the "essence" of the offense is "an intrusion into the structure of another with the intent to commit a crime therein" (quoting 3 Charles E. Torcia, *Wharton's Criminal Law* § 331, at 302 (15th ed. 1995))). Conversely, the sexual-abuse statute does not mention "occupied structures." *See generally* Iowa Code ch. 709. Indeed, the *location* of the abuse is rarely determinative. *But see, e.g.*, *id.* § 709.16(3) (prohibiting sex acts between any peace officer or county representative and "a prisoner incarcerated in a county jail"). The statute's core purpose is to "protect the freedom of choice to engage"—or, perhaps more accurately, to *not* engage—"in sex acts," *regardless* of the victim's location. *State v. Meyers*, 799 N.W.2d 132, 143 (Iowa 2011). It exists to punish "unwanted and coerced intimacy" wherever it occurs. *Id.* (quoting Model Penal Code § 213.1 cmt. 4, at 301). These differing statutory purposes—protection against nonconsensual

sex versus protection against invasion of occupied structures—suggest multiple punishments were intended.

For all of these reasons, we conclude Goodson's conviction of third-degree sexual abuse does not merge into his conviction of first-degree burglary.

### D. Illegal Sentence

Finally, Goodson claims the district court entered an illegal sentence by specifying the duration of his sex-offender registry obligation. He contends this portion of his sentence should be vacated. The State agrees. So we vacate Goodson's sentence in part, and we remand for resentencing.[13]

### III. Conclusion

We find the bad-acts evidence was admissible. We also find error was not preserved on the recusal claims. And, because we believe the legislature intended separate punishments for first-degree burglary and third-degree sexual abuse, we find merger was not appropriate. But we do remand for resentencing as directed above.

**CONVICTIONS AFFIRMED, SENTENCE VACATED IN PART, AND REMANDED FOR RESENTENCING.**

---

[13] In its brief, the State contends that the district court should impose the lifetime special sentence as required by Iowa Code section 903B.1 and an additional two-year term of parole or work release under section 901A.2(8). Because the State did not cross-appeal, we decline to address these issues on appeal. *See In re Virgil De Groote Revocable Tr.*, No. 18-0346, 2019 WL 478511, at *3 (Iowa Ct. App. Feb. 6, 2019) (noting "the prevailing party cannot seek a more favorable ruling than the party obtained in trial court without filing a cross-appeal" and collecting cases). This does not, however, preclude the State from raising its concerns before the district court on remand. *See* Iowa R. Crim. Pro 2.24(5)(a) ("The court may correct an illegal sentence at any time.").